**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| TEHAMA-COLUSA CANAL AUTHORITY, *Plaintiff-Appellant*, v. UNITED STATES DEPARTMENT OF THE INTERIOR; KENNETH LEE SALAZAR, in his official capacity as Secretary of the Interior; UNITED STATES BUREAU OF RECLAMATION; MICHAEL L. CONNOR, in his official capacity as the Commissioner of Reclamation; DONALD R. GLASER, in his official capacity as Regional Director of the Bureau of Reclamation for the Mid-Pacific Region, *Defendants-Appellees*, SAN LUIS & DELTA MENDOTA WATER AUTHORITY; WESTLANDS WATER DISTRICT, *Intervenor-Defendants-Appellees*. | No. 11-17199 D.C. No. 1:10-cv-00712-OWW-DLB OPINION |

Appeal from the United States District Court
for the Eastern District of California
Oliver W. Wanger, Senior District Judge, Presiding

Argued and Submitted
December 5, 2012—San Francisco, California

Filed July 1, 2013

Before: Stephen S. Trott and Johnnie B. Rawlinson, Circuit
Judges, and Frederic Block, Senior District Judge.[*]

Opinion by Judge Rawlinson

## SUMMARY[**]

### Water Rights

In this action seeking to establish priority water rights under Central Valley Project water service contracts in the Sacramento Valley, the panel affirmed the district court's summary judgment on the alternate basis that California Water Code § 11460 does not require the Bureau of Reclamation to provide Central Valley Project contractors priority water rights, because contracts between the plaintiff Tehama-Colusa Canal Authority (Canal Authority) and the Bureau contained provisions that specifically addressed allocation of water during shortage periods.

---

[*] The Honorable Frederic Block, Senior United States District Judge for the Eastern District of New York, sitting by designation.

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

The Canal Authority, a joint powers authority comprised of sixteen water agency members, asserted that the Bureau's water shortage allocations failed to adhere to area of origin protections as provided in California Water Code (CWC) §§ 11460, 11463, and 11128; Reclamation Law; the Fifth Amendment; and state law water rights. The panel held that the renewal contracts entered into by the Canal Authority and its members included terms and provisions outlining the procedures to be followed in allocating water resources during shortage periods. The panel held that the Canal Authority and its members assented to these terms and provisions in the renewal contracts, and brought actions in state court to validate the renewal contracts pursuant to California law. The Bureau's exercise of discretion therefore when apportioning water during shortage years in accordance with these renewal contracts was not arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law.

## COUNSEL

Steven P. Saxton (argued), Downey Brand LLP, Sacramento, California; Ellen Lee Trescott (argued), Adams Broadwell Joseph & Cardozo, Sacramento, California; J. Mark Atlas, Willows, California, for Plaintiff-Appellant.

Ignacia S. Moreno, Assistant Attorney General, Vivian H.W. Wang (argued), David W. Gehlert, Charles R. Shockey, and E. Ann Peterson, Assistant United States Attorneys, United States Department of Justice, Environment & Natural Resources Division; Amy Aufdemberge and Shelly Randel, Of Counsel, United States Department of the Interior, Office of the Solicitor, Washington, D.C., for Defendants-Appellees.

Daniel J. O'Hanlon (argued), Hanspeter Walter, and Rebecca R. Akroyd, Kronick, Moskovitz, Tiedemann & Girard, Sacramento, California, for Intervenor Defendant-Appellees San Luis & Delta-Mendota Water Authority and Westlands Water District.

H. Craig Manson, General Counsel, Westlands Water District, Fresno, California, for Intervenor Defendant-Appellee Westlands Water District.

Jennifer L. Spaletta, Jeanne M. Zolezzi, and Natalie M. Weber, Herum Crabtree, Stockton, California, for Amici Curiae Stockton East Water District and Solano County Water Agency.

Alan B. Lilly and Katrina C. Gonzales, Bartkiewicz, Kronick & Shanahan, Sacramento, California, for Amicus Curiae Northern California Water Association.

Robert E. Donlan and Elizabeth P. Ewens, Ellison, Schneider & Harris L.L.P., Sacramento, California, for Amici Curiae Alameda County Water District, Castaic Lake Water Agency, Coachella Valley Water District, Kern County Water Agency, Metropolitan Water District of Southern California, Mojave Water Agency and Palmdale Water District.

Kamala D. Harris, Attorney General of California, Kathleen A. Kenealy, Senior Assistant Deputy Attorney General, Robert W. Byrne, Supervising Deputy Attorney General, William Jenkins, Deputy Attorney General, San Francisco, California, for Amici Curiae California Water Resources Control Board and Department of Water Resources.

## OPINION

RAWLINSON, Circuit Judge:

The Tehama-Colusa Canal Authority (Canal Authority) appeals the district court's decision to grant summary judgment to the Department of Interior (Interior), Bureau of Reclamation (Bureau), San Luis & Delta-Mendota Water Authority (San Luis), and Westlands Water Authority (Westlands).

We have jurisdiction pursuant to 28 U.S.C. § 1291. We affirm the district court's decision on the alternate basis that California Water Code § 11460 does not require the Bureau to provide Central Valley Project contractors priority water rights, because contracts between the Canal Authority and the Bureau contain provisions that specifically address allocation of water during shortage periods.

## I.  BACKGROUND

### A.  Procedural History[1]

Canal Authority is a joint powers authority comprised of sixteen water agency members. Canal Authority initiated this action against Interior; the Secretary of Interior (Secretary); the Bureau; the Bureau's regional director of the Mid-Pacific Region; and intervenors, San Luis and Westlands, to establish priority water rights under Central Valley Project (CVP) water service contracts in the Sacramento Valley.

---

[1] The facts are derived largely from the district court's thorough opinion. *See Tehama-Colusa Canal Auth. v. U.S. Dep't of Interior*, 819 F. Supp. 2d 956 (E.D. Cal. 2011).

Specifically, Canal Authority requested a ruling limiting the export of water south of the Sacramento-San Joaquin Delta (Delta) until Canal Authority and its members received 100% of the water supply referenced in their CVP contracts. Canal Authority sought injunctive and declaratory relief.

Canal Authority maintained that the Bureau's water shortage allocations failed to adhere to area of origin protections as provided in California Water Code (CWC) §§ 11460, 11463, and 11128; Reclamation Law; the Fifth Amendment; and state law water rights articulated by the United States Supreme Court in *California v. United States*, 438 U.S. 645 (1978).

The defendants sought summary judgment on the bases that Canal Authority's APA claims were subject to the six-year statute of limitations, and that the Canal Authority's interpretation of § 11460 did not grant water allocation priority to the Canal Authority or its members. The district court granted summary judgment for the defendants, holding that all claims arising before February 11, 2004 were time-barred, and that Canal Authority was not entitled to priority water allocation under the CVP contracts. Canal Authority filed this timely appeal.

## B.  CVP Operations and Allocation of Water

The CVP operates under a Coordinated Operating Agreement between the Bureau and the California State Department of Water Resources (DWR) as an integrated unit. Contractors receiving water from the CVP do not apply for appropriative water rights from the State Water Resources Control Board (SWRCB), as would be required to perfect a water right from a California water source. Rather, water

users contract directly with the Bureau for water allocations. Indeed, not one of the Canal Authority's members has ever applied for or received a water rights permit from the SWRCB.

The Bureau normally allocates CVP water on a pro rata basis, except when operational constraints or contract provisions dictate priority allocation. In dry water years, all CVP contractors have received less than their full contractual complement of water. When water shortages occur, contractors south of the Delta usually bear an increased burden of the shortages.

The two drought years at issue in this case are 2008 and 2009. In 2008, Canal Authority and other north-of-Delta water service contractors received 100% of their contractual water allocations from the Bureau. South-of-Delta contractors only received 50% of their allocations. In 2009, the Governor of California declared a state of emergency because of the drought. During that year, Canal Authority and other north-of-Delta contractors received 40% of their allocations, while south-of-Delta contractors received 10%.

## C. State Law Area of Origin Statutes

The area of origin statutes, CWC §§ 11460-11465, were enacted to alleviate the concern that construction of the CVP would result in inadequate water supplies for local users. It is undisputed that the Bureau's appropriation of water for the CVP is subject to the area of origin statutes. However, an important distinction is that while the area of origin statutes help to determine the total quantity of water available to the Bureau for allocation, those statutes in no way control how the water is allocated by the Bureau once acquired.

### D.  The Bureau's Permits for CVP Water Supply

In 1961, the SWRCB approved the United States' application to appropriate Sacramento River water for the CVP.  This approval, known as Decision 990 (D-990), recognized that one of the CVP's principal functions was to export water from the Sacramento River watershed into the San Joaquin Valley.

D-990 incorporated the SWRCB's interpretation of the area of origin statutes by acknowledging that the public interest required that water originating in the Sacramento Valley Basin be made available for use within the Basin and the Delta before it was exported to more distant areas. Protection of the articulated public interest was manifested by the condition set forth in Term 22,[2] which conditioned the Bureau's water rights permits.  Term 22 established that the Bureau's water permits were "subject to rights initiated by applications for use within said watershed and Delta regardless of the date of filing said applications."  Term 22 was designed to protect appropriators of water with permits, not contractors who obtained water through CVP contracts.

---

[2] Term 22 provides in pertinent part:

> Direct diversion and storage of water under permits issued . . . for use beyond the Sacramento-San Joaquin Delta or outside the watershed of Sacramento River Basin shall be subject to rights initiated *by applications for use* within said watershed and Delta regardless of the date of filing said applications.

(Emphasis added and footnote references omitted).

The condition reflected in Term 23[3] addressed the use of CVP water by water users within an area of origin. Rather than requiring CVP water to be allocated for the benefit of areas of origin, Term 23 granted then-current water users a three-year window to request water service contracts from the Bureau, which contracts would be preferred over requests from users outside the watershed. Also included in Term 23 was a ten-year preference for then-water users to obtain a water service contract.

In 1978, the SWRCB modified the Bureau's CVP permits to require the Bureau to meet water quality standards in the Delta and Suisun Marsh by either releasing water from storage or curtailing diversions, so that outflow from the Delta would be sufficient to prevent sea water from intruding into the Delta. The California Court of Appeal affirmed the SWRCB decision (Decision 1485), and recognized the SWRCB's authority to modify the Bureau's water right permits.

---

[3] Term 23 provides in pertinent part:

> The export of stored water under permits issued pursuant to [a]pplications outside the watershed of Sacramento River Basin or beyond the Sacramento-San Joaquin Delta shall be subject to the reasonable beneficial use of said stored water within said watershed and Delta, both present and prospective, provided, however, that agreements for the use of said stored water are entered into with the United States prior to March 1, 1964, by parties currently diverting water from Sacramento River and/or Sacramento-San Joaquin Delta and prior to March 1, 1971, by parties not currently using water from Sacramento River and/or Sacramento-San Joaquin Delta.

### E.  Application of the Area of Origin Statutes by SWRCB

Two Canal Authority member agencies filed a complaint with the SWRCB in 1991 claiming preferential access to CVP water supply under the area of origin statutes.  The SWRCB rejected the claim, finding that Canal Authority members had no preferential access to CVP water supply under area of origin statutes.  The SWRCB interpreted CWC § 11460 as protecting areas of origin, but with no guarantee that the water supply needs of the entire area of origin, or any particular water users within the area of origin, would be met.  Rather, CWC § 11460 protected water users within the area of origin against export appropriations.  In other words, CWC provided a guarantee that the SWRCB would not reject new applications in the area of origin due to unavailability of water for appropriation.   Area of origin protection was secured by filing an application with the SWRCB and receiving a water rights permit[4] with seniority vis à vis the state Department of Resources and the Federal Bureau of Reclamation as exporters.

 "The SWRCB rejected [Canal Authority's] arguments that the CVP is required under [CWC] §§ 11460, et seq. to supply water to meet the needs of users in the Sacramento Valley. . . ." *Tehama-Colusa Canal Auth. v. U.S. Dep't of Interior (Tehama)*, 819 F. Supp. 2d 956, 970 (E. D. Cal. 2011) (citation and internal quotation marks omitted).  "On reconsideration, the Board explained: [Canal Authority] has been advised in the past that the appropriate way to obtain additional service water supplies under the Watershed Protection Act is to file applications to appropriate the

---

[4] Neither Canal Authority nor its members hold such permits.

additional water. . . ."  *Id.* (citation and internal quotation marks omitted).

## F.  The Disputed CVP Water Service Contracts

CVP water is available only through a water service contract between the water user and the Bureau.  There are three categories of contracts for the provision of CVP federal water supply.  The first category is comprised of "Exchange Contracts" that give express contractual priority to designated "Exchange Contractors" on the basis of their pre-1914 riparian and appropriative rights to the San Joaquin River.  *Id.* at 970–71.  These Exchange Contractors "traded" their preexisting water rights to the Bureau.  *Id.* at 971.  The Bureau obtained water permits from the SWRCB that were co-extensive with the exchanged water rights.  The Bureau in turn entered into water service contracts with the Exchange Contractors for CVP federal water supply on a priority access basis.

The second category of CVP contracts encompasses "Settlement Contracts" that grant a contractual priority to CVP water supply through the inclusion of provisions limiting the extent of shortage amounts.  These contracts typically arose from pre-existing water rights.

The third category contains contracts held by CVP contractors north-of-Delta, in-Delta, and south-of-Delta.  This category of CVP contractors, which includes Canal Authority and most of its members, held no pre-existing water rights to offer as consideration, and therefore receives no priority access to CVP water supply.

### 1. Canal Authority Members' Right to CVP Water under Their Water Service Contracts

Canal Authority members executed their original CVP water service contracts in the 1960 and 1970. All the original Canal Authority contracts contained shortage provisions that permitted the Bureau to apportion and reduce available water supply in years of shortage. Before these original contracts expired in 1995, the Bureau delivered less than 100% of contract amounts to Canal Authority members and Westlands in water shortage years 1977, 1990, 1991, 1992, and 1994.

In 1992, Congress enacted the Central Valley Project Improvement Act (CVPIA), Pub. L. No. 102-575, 106 Stat. 4706 (1992), which reallocated priorities for use of CVP water. Among other things, the CVPIA precluded the Secretary from entering into new CVP contracts for delivery of CVP water for any purpose other than fish and wildlife until certain environmental requirements were met. The CVPIA also directed that 800,000 acre-feet of "project yield" be immediately dedicated to the implementation of fish, wildlife and habitat restoration purposes established by the Act. *Tehama*, 819 F. Supp. at 972. The passage of the CVPIA occurred when many CVP contracts were just about to expire.

### 2. The CVP Interim Contracts

In 1995, Canal Authority members entered into "interim" renewal contracts pending review and assessment of long-term renewal contracts. *Id.* Interim renewal contracts commenced in 1995 and were subsequently renewed for periods up to two years until 2005. These interim contracts included water shortage provisions authorizing the Bureau to

determine conditions of shortage and apportion the reduced available water supply among CVP contractors.  The interim contracts did not provide for preferential water allocations based on area of origin considerations.  During the span of the interim contracts, the Bureau reduced available water supply among all CVP water service contractors in shortage years 1995, 1997, 1999, and 2001.  The Canal Authority CVP water service contracts included a shortage provision through 2005.

### 3.  The Bureau's Interpretation and Performance of Canal Authority's Current Contracts

In the process of discussing the renewal of long-term contract provisions, the Bureau and Canal Authority members debated at length the applicability of area of origin laws to the CVP contracts and the extent of the Bureau's authority to reduce water deliveries in times of shortage.

The Bureau took the position that CWC § 11460 did not apply to the allocation and delivery of CVP water under CVP contracts.  As early as 1994, the Bureau issued an Area of Origin Issue Paper articulating the Bureau's position that § 11460 is "directed toward obtaining prior water rights, not obtaining deliveries of water under the Project's rights."  *Id.* (citation omitted).  In 1996, another Bureau draft report confirmed that area of origin statutes in California water law "do not guarantee that the water supply needs of an entire area of origin, will or can be met."  *Id.* (citation omitted).

The Bureau explained that area of origin statutory provisions are not a part of the water delivery contract between the water user and the Bureau.  Instead, the area of origin provisions are part of the water rights in the region.  In sum: "[a]rea of origin statutes do not establish any priority to

the allocation of CVP contract water or . . . CVP water used for implementation of the CVPIA. . . ."  *Id.* (citation and alterations omitted).  In 2000, the Bureau reiterated: "Area of origin/county of origin statutes do not give any CVP user a priority over any other CVP user regarding water service provided by CVP contracts . . . this is also the position of the State Water Resources Control Board."  *Id.* at 973 (citation and second alteration omitted).  In keeping with its stated position, the Bureau consistently rejected requests that an area of origin provision be included in north-of-Delta CVP contracts.  Canal Authority acknowledged that "the Bureau's conclusions come as no surprise, as this is a restatement of positions they [sic] have articulated on numerous occasions in the past. . . ."  *Id.* (citation omitted).

### 4.  Long-term Renewal Contracts with Shortage Provisions and No Priority Allocation Terms

All Canal Authority members executed long-term CVP water service contracts in 2005 (renewal contracts).  Each renewal contract contains shortage provisions that are substantively identical to the shortage provision in the prior long-term contracts under which the Bureau declared conditions of shortage, and allocated less than full contractual amounts to Canal Authority and its members.  The renewal contracts ensured operation of the CVP "for diversion, storage, carriage, distribution and beneficial use, for flood control, irrigation, municipal, domestic, industrial, fish and wildlife mitigation, protection and restoration, generation and distribution of electric energy, salinity control, navigation and other beneficial uses."  *Id.*

Article 12 of the renewal contracts authorized the Bureau to determine shortages and apportion waters in times of

shortage without regard to area of origin. In the sixty-plus years of the CVP's existence and the almost forty years of disputes with Canal Authority regarding area of origin priority, the CVP's practice and position have remained constant.

### 5. Validation of Renewal Contracts in State Court

Article 38 of the renewal contracts provides that Canal Authority members must each obtain a state court judgment validating its water services contract with the Bureau. This validation process was completed by each Canal Authority member. The effect of the validation process was to establish the enforceability of the renewal contracts under state law.

Following execution and validation of the renewal contracts, the Bureau continued to make water deliveries and to reduce water allocations in years when shortages were declared, as it had done under the original and interim contracts. Invoking Article 12, the Bureau declared conditions of shortage in 2007, 2008, and 2009. The Bureau delivered less than full contract amounts to all CVP water service contractors, including Canal Authority members, in 2008 and 2009. This action followed.

## II. STANDARDS OF REVIEW

We review *de novo* the district court's grant of summary judgment and the district court's interpretation and application of federal statutes. *See San Luis & Delta-Mendota Water Auth. v. United States*, 672 F.3d 676, 699 (9th Cir. 2012).

Contract interpretation is a mixed question of law and fact that we also review *de novo*. *See Smith v. Cent. Ariz. Water Conservation Dist.*, 418 F.3d 1028, 1034 (9th Cir. 2005). When the United States is a party to an agreement "entered into pursuant to federal law," that law governs interpretation of the contract. *Id.* "[F]ederally-funded water reclamation products are by nature necessarily federal, and we have therefore consistently applied federal law to interpret reclamation contracts . . . ." *Id.* (citation and internal quotation marks omitted).

"A written contract must be read as a whole and every part interpreted with reference to the whole, with preference given to reasonable interpretations . . . ." *Klamath Water User Protective Ass'n v. Patterson*, 204 F.3d 1206, 1210 (9th Cir. 2000), *as amended* (citation omitted). When the contract terms are clear, the parties' intent must be ascertained from the contract, and the contract terms connote their ordinary meaning. *See id.*

When there is no provision for judicial review in legislation, as with the CVPIA, we review the challenged agency action pursuant to the Administrative Procedure Act (APA). *See San Luis & Delta-Mendota Water Auth.*, 672 F.3d at 699. Pursuant to the APA, we will only set aside an agency's action when it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law . . . ." *Id.* at 699–700 (citation omitted). When the agency has articulated a rational connection between the facts and the decision made, we will uphold the agency's action. *See id.* at 700.

## III.    DISCUSSION

### A. CWC § 11460 Does Not Compel the Bureau to Prioritize Allocation of Federally Appropriated Water to Canal Authority Members

The renewal contracts to which Canal Authority and its members mutually assented did not include area of origin language or priority distribution.  During negotiations, the Bureau steadfastly rebuffed efforts to include terms that would provide priority in shortage periods.  When Canal Authority and its members signed the renewal contracts, there was absolutely no misunderstanding of the Bureau's position regarding area of origin protection, priority rights, or shortage protection.  Indeed, Canal Authority acknowledged the Bureau's consistent and persistent negotiating stance that area of origin law did not afford Canal Authority and its members priority to CVP water supply.  Considering the plain language and terms of the contracts, the Bureau did not act arbitrarily when it rejected Canal Authority's demand to prioritize federally appropriated water to Canal Authority and its members.  *See San Luis & Delta-Mendota Water Auth.*, 672 F.3d at 700 (noting that agency action should be upheld when the agency articulates a rational connection between its decision and the facts).

Of course, as with any other contract, the Bureau could not flout the law in declining to include area of origin provisions in the renewal contracts. *See Peterson v. United States Dep't of Interior*, 899 F.2d 799, 812 (9th Cir. 1990) (explaining that water district contracts must conform to governing law).  Indeed, the renewal contracts contained just such provisions.

However, as discussed above, CWC § 11460 has not been interpreted so as to provide priority for Canal Authority and its members in the realm of federally protected water. *See Tehama*, 819 F. Supp. 2d at 970. Because Canal Authority and its members hold no water permits issued by the SWCRB that would establish priority under CWC § 11460, the Bureau's continued rejection of priority provisions in the water service contracts flouted no applicable law.

### B. Canal Authority's Water Service Contracts Temper Their Rights to a Full Complement of Contracted Water and any Claims to Priority Delivery of Water

In 1993, we held that the Bureau was not bound to first satisfy the needs of water district contractors when the San Luis Act does not mandate it. *See Westlands Water Dist. v. Firebaugh Canal*, 10 F.3d 667, 671 (9th Cir. 1993). Nothing has changed.

The Bureau has adhered to this interpretation of the San Luis Act, up to and including the most recent 2005 renewal contracts. Article 12 of those contracts provides in no uncertain terms that Canal Authority and its members are not entitled to the full complement of water contracted for, and may have to endure pro rata reduction in times of shortage, along with other CVP contractors. Article 12 expressly and explicitly provides that in times of shortage, the Bureau may divert water to other contractors to meet the Bureau's overall goal to provide water to the maximum number of users for the greatest potential benefit. Article 12 forecloses any persuasive argument that Canal Authority and its members are entitled, during times of shortage, to receive the full complement of contracted water supply. *See id*. at 671.

We agree with the district court that Canal Authority's belated challenge to the shortage provisions in the renewal contracts is unavailing.  Canal Authority's contention that no condition of shortage can exist under the renewal contracts to the extent water is shipped to south-of-Delta contractors is belied by the definition of condition of shortage in the renewal contracts themselves.  The contracts define shortage in the context of "the Project."  In turn, "the Project refers to the *entire* Central Valley Project," north and south of the Delta.  *Tehama*, 819 F. Supp. 2d at 991 (emphasis added). This clear contract language controls.  *See Klamath Water User Protective Ass'n*, 204 F.3d at 1210.  Similarly, Canal Authority's continued reliance on the provisions of CWC § 11460 is unwarranted in view of the Bureau's and SWCRB's unvarying interpretations to the contrary.  As the district court noted, there is a "total absence of any language [in the renewal contracts] granting an area of origin preference, or that limits or abrogates the Article 12 allocation mandate . . ." *Tehama*, 819 F. Supp. 2d at 995.

## C. Canal Authority Is Foreclosed from Asserting Statutory Rights Under Area of Origin and Water Priority Theories

Once the renewal contracts were finalized among the parties, Canal Authority and its members invoked the provisions of California Code of Civil Procedure (Cal. CCP) § 870 to obtain judgments validating each of the renewal contracts under California law. *See Tehama*, 819 F. Supp. 2d at 996.  Each validation judgment ensured the enforceability and validity of the renewal  contracts.  Each validation judgment certified that *all* provisions of the renewal contract "are lawful, valid, enforceable, and binding upon the respective parties thereto . . . ."). *Id.* (citations omitted).

Because the validation judgments became final in 2005, Canal Authority and its members are now foreclosed from challenging any provision of the renewal contracts. *See id.* at 996–97; *see also* Cal. CCP § 870[5]; *Embarcadero Mun. Improvement Dist. v. Cnty. of Santa Barbara*, 88 Cal. App. 4th 781, 792 (2001) (recognizing that challenges to validated contracts are precluded after expiration of the applicable statute of limitations for appeal).

The cases cited by Canal Authority to support its argument that its challenge to Article 12 is alive and well involved agreements or contracts that were not initially valid. *See Fontana Redev. Agency v. Torres*, 153 Cal. App. 4th 902, 913 (2007) ("[T]he courts cannot validate ongoing illegality . . . .") (citation omitted); *see also Embarcadero Mun. Improvement Dist.*, 88 Cal. App. 4th at 792 (describing challenge to expenditure not authorized by the validated

---

[5] CCP § 870 provides in pertinent part:

> (a) The judgment, if no appeal is taken, or if taken and the judgment is affirmed, shall, notwithstanding any other provision of law . . . , thereupon become and thereafter be forever binding and conclusive, as to all matters therein adjudicated or which at that time could have been adjudicated, against the agency and against all other persons, and the judgment shall permanently enjoin the institution by any person of any action or proceeding raising any issue as to which the judgment is binding and conclusive.

> (b) Notwithstanding any other provision of law . . . , no appeal shall be allowed from any judgment entered pursuant to this chapter unless a notice of appeal is filed within 30 days after the notice of entry of the judgment, or, within 30 days after the entry of the judgment if there is no answering party. . . .

agreement); *Redev. Agency of Fresno, Inc. v. Herrold*, 86 Cal. App. 3d 1024, 1029–30 (1978) (same).   In contrast, the contract provisions at issue in this case are and were at all times valid.   Canal Authority and its members voluntarily consented to the validated contracts, and with full knowledge of the Bureau's interpretation and implementation of the area of origin statutes and the shortage provisions.   Canal Authority and its members had a full and fair opportunity to challenge any contract provision during the validation proceeding, including whether any contract provision ran afoul of California law.   Once the contracts were validated, the state court determination became binding upon any subsequent action involving the same parties and the same issue, determination of which was necessary for final resolution of the initial action.   *See Cent. Ariz. Irrigation & Drainage Dist. v. Lujan*, 764 F. Supp. 582, 594–95 (D. Ariz. 1991).   Because Canal Authority and its members were parties to the validation action and because the validation action resolved the validity of the renewal contract provisions, they are now foreclosed from seeking to circuitously undo the contract provisions to which they previously acceded.   *See id.*

Canal Authority and its members rely on *SWRCB Cases*, 136 Cal. App. 4th 674 (2006), to support their argument that area of origin statutes provide priority water appropriation rights.   Canal Authority quotes the following language from Justice Robie's opinion:

> To the extent section 11460 reserves an inchoate priority for the beneficial use of water within its area of origin, we see no reason why that priority cannot be asserted by someone who has (or seeks) a contract with

the Bureau for the use of that water. (*See*
Robie & Kletzing, Area of Origin
Statutes—the California Experience (1979) 15
Idaho L. Rev. 419, 436–438 [discussing right
of area of origin users to contract with
Department for SWP water].) This does not
mean a user within the area of origin can
compel the Bureau to deliver a greater
quantity of water than the user is otherwise
entitled [to] under the contract. It simply
means the Bureau cannot reduce that user's
contractual allotment of water to supply water
for uses outside the area of origin, absent
some other legal basis for doing so that
trumps section 11460.

*Id.* at 758 (brackets in the original).

We agree with the district court that Canal Authority's
reliance on the quoted language is misplaced. *See Tehama*,
819 F. Supp. 2d at 984. The rationale espoused in *SWRCB
Cases* was tempered by the reasoning in *El Dorado Irrigation
District v. SWRCB*, 142 Cal. App. 4th 937 (2006). Only a
few months after penning the *SWRCB Cases* decision, Justice
Robie opined in *El Dorado Irrigation District* that, although
a plaintiff may be entitled to assert priority rights, the plaintiff
had no rights regarding water that was previously diverted
and properly stored for future use. *See id.* at 976; *see also
Tehama*, 819 F. Supp. 2d at 983. Justice Robie clarified that
§ 11460 does not purport to limit in any way the Bureau's
authority to allocate water that was previously diverted and
stored in accordance with approved CVP procedures. *See El
Dorado Irrigation District*, 142 Cal. App. 4th at 974–75.
Water users simply cannot assert any superior right to that

stored water under area of origin principles.  Rather, water rights to previously diverted and stored water are governed by water permits and water contracts.  *See id.* at 975–76.  In any event, as the district court noted, the decision in *SWRCB Cases* lacks persuasive power because:  (1) CVP contracts were not at issue in that proceeding; (2) there was no comprehensive discussion of the CVP project; and (3) the proposed interpretation of § 11460 by Canal Authority and its members would nullify explicit provisions of the renewal contracts.  *See Tehama*, 819 F. Supp. 2d at 984–85.  The Bureau clearly and consistently articulated the rationale for its stated position regarding allocation of CVP water during shortage periods.  Its subsequent allocation of water during shortage periods in accordance with its stated position was not an abuse of discretion, unreasonable, or contrary to applicable law.  *See San Luis & Delta-Mendota Water Auth.*, 672 F.3d at 699–700 (setting standard of review).

## IV.    CONCLUSION

The district court properly determined that CWC § 11460 does not bestow priority water rights upon Canal Authority and its members.  The renewal contracts entered into by the Canal Authority and its members included terms and provisions outlining the procedures to be followed in allocating water resources during shortage periods.  The Canal Authority and its members assented to these terms and provisions in the renewal contracts, and brought actions in state court to validate the renewal contracts pursuant to California law.  The Bureau's exercise of discretion when apportioning water during shortage years in accordance with these renewal contracts was not "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law."  5 U.S.C. § 706(2)(A); *see also San Luis & Delta-*

*Mendota Water Auth.*, 672 F.3d at 715 (upholding Bureau's discretionary decision against a similar challenge).

**AFFIRMED.**