Filed 11/30/18; Certified for Publication 12/27/18 (order attached)

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA


| | |
|---|---|
| SAN DIEGO UNIFIED SCHOOL DISTRICT et al., <br><br> Plaintiffs and Appellants, <br><br> v. <br><br> BETTY YEE, as State Controller, <br><br> Defendant and Respondent. | D072894 <br><br><br> (Super. Ct. No. 37-2016-00042334-CU-WM-CTL) |


APPEAL from a judgment of the Superior Court of San Diego County, Lisa C. Schall, Judge. Affirmed.

Dannis Woliver Kelley and Christian Mark Keiner, William Benjamin Tunick, Chelsea Olson Murphy for Plaintiffs and Appellants.

Xavier Becerra, Attorney General, Thomas S. Patterson, Senior Assistant Attorney General, Paul Stein and Aaron David Jones, Deputy Attorneys General for Defendant and Respondent.

Plaintiffs and appellants San Diego Unified School District, Clovis Unified School District, Poway Unified School District, San Jose Unified School District, Newport-Mesa Unified School District, and Grossmont Union High School District (the Districts) appeal from an order sustaining without leave to amend the demurrer of defendant and respondent State Controller Betty Yee (the Controller) to the Districts' first amended petition for writ of mandate and complaint. The Districts had challenged the Controller's reduction of subvention—reimbursement of monies from state funds to the Districts[1]—but the trial court ruled the action was barred by the 90-day statute of limitations set forth in Code of Civil Procedure[2] section 341.5, implicitly finding the action was one "challenging the constitutionality of any statute relating to state funding for . . . school districts" within the meaning of section 341.5.

The Districts contend that under its plain language, section 341.5 does not apply because, among other reasons, their challenge involves subvention, not state funding; the dispute is focused on the Controller's actions, not the constitutionality of the statutes under which the Controller acted; and their challenge is not a facial challenge subject to section 341.5. We reject these contentions, and conclude section 341.5 applies to the Districts' action, the gravamen of which is a challenge to the constitutional validity of

---

[1] See *Hayes v. Commission on State Mandates* (1992) 11 Cal.App.4th 1564, 1577 [" 'Subvention' generally means a grant of financial aid or assistance, or a subsidy"]; *Gonzalez v. Santa Clara County Dept. of Social Services* (2014) 223 Cal.App.4th 72, 89 [subvention is in essence reimbursement from state funds].)

[2] Undesignated statutory references are to the Code of Civil Procedure.

statutes—Government Code sections 17581.8, 17581.9 and 17581.95—providing one-time general state funding for school districts. We accordingly affirm the judgment of dismissal.

FACTUAL AND PROCEDURAL BACKGROUND

We set out the facts from the Districts' first amended petition and complaint; in doing so, we accept as true all the material allegations but not contentions, deductions or conclusions of law. (*Roy Allan Slurry Seal, Inc. v. American Asphalt South, Inc.* (2017) 2 Cal.5th 505, 512.) We may also consider matters that are judicially noticeable. (*Grossmont Union High School Dist. v. State Dept. of Education* (2009) 169 Cal.App.4th 869, 897 (*Grossmont Union*).)

The Districts are public school districts, which entitles them to be reimbursed by the state for the costs associated with any new program or higher level of service mandated by the Legislature or any state agency. That right to reimbursement or subvention is set forth in article XIII B, section 6 of the California Constitution.[3] The

---

[3] Article references are to the California Constitution. Article XIII B, section 6 provides in part: "Whenever the Legislature or any state agency mandates a new program or higher level of service on any local government, the State shall provide a subvention of funds to reimburse that local government for the costs of the program or increased level of service . . . ." (Cal. Const., art. XIII B, § 6, subd. (a).) It is undisputed that a school district is a local government protected by this section. (*California School Boards Association v. State of California* (2018) 19 Cal.App.5th 566, 572, review granted April 18, 2018, S247266.) This court has addressed in varying depths article XIIIB, section 6 and the procedures to determine if reimbursable state-mandated costs have been imposed in *Grossmont Union*, *supra*, 169 Cal.App.4th at pages 876-878, *County of San Diego v. Commission on State Mandates* (2016) 7 Cal.App.5th 12, 18-20, affd. and cause remanded (2018) ___ Cal.5th ___ [2018 WL 6037872], *California School Boards Association v. State of California* (2011) 192 Cal.App.4th 770, 780-782, *County of San*

3

Legislature created and delegated to the Commission on State Mandates the authority to hear and decide whether a statute or executive order imposes costs mandated by the State within the meaning of article XIII B, section 6 and created a statutory scheme for local agencies or school districts to claim subvention. Under the scheme, school districts file initial and then annual reimbursement claims. The Controller is charged with receiving, auditing, and accounting for the claims submitted by local agencies for costs of implementing the state-mandated programs.

Since the 2013-2014 school year, funding for kindergarten through grade 12 school districts has been governed by a formula that establishes a minimum amount of revenue per student for each school district. In 2014, 2015 and 2016, the Legislature enacted Government Code sections 17581.8, 17581.9 and 17581.95 (at times the funding statutes) providing one-time general state funding to school districts and other local education agencies. Under those funding statutes, the State Superintendent of Public Instruction allocated funds essentially based on a school district's average daily attendance rate without relation to the amount of subvention owed to it. Each law provides in part: "Allocations made pursuant to this section shall first satisfy any outstanding claims pursuant to Section 6 of Article XIII B of the California Constitution

_____

*Diego v. State of California* (2008) 164 Cal.App.4th 580, 588, and *Redevelopment Agency v. Commission on State Mandates* (1997) 55 Cal.App.4th 976, 980-982.)

4

for reimbursement of state-mandated local program costs for any fiscal year."  (Gov. Code, §§ 17581.8, subd. (c), 17581.9, subd. (d), 17581.95, subd. (d).[4])

For fiscal years 2014-2015, 2015-2016 and 2016-2017, the Controller's reports showed a reduction of subvention owed to the Districts, reflecting the Controller's interpretation of the language contained in the funding statutes.  The Controller acknowledged in statements accompanying her reports that " '[t]he State Controller's Office is required to offset amounts received by each school district . . . against any balances of unpaid claims for reimbursement of state-mandated local costs and interest in chronological order beginning with the earliest claim.' "

---

[4]     More fully, subsections (c) and (d) of these statutes provide:  "Allocations made pursuant to this section shall first satisfy any outstanding claims pursuant to Section 6 of Article XIII B of the California Constitution for reimbursement of state-mandated local program costs for any fiscal year.  Notwithstanding Section 12419.5 and any amounts that are paid in satisfaction of outstanding claims for reimbursement of state-mandated local program costs, the Controller may audit any claim as allowed by law, and may recover any amount owed by school districts . . . pursuant to an audit only by reducing amounts owed by the state to school districts . . . for any other mandate claims.  Under no circumstances shall a school district . . . be required to remit funding back to the state to pay for disallowed costs identified by a Controller audit of claimed reimbursable state-mandated local program costs.  The Controller shall not recover any amount owed by a school district . . . pursuant to an audit of claimed reimbursable state-mandated local program costs by reducing any amount owed a school district . . . for any purpose other than amounts owed for any other mandate claims.  The Controller shall apply amounts received by each school district . . . against any balances of unpaid claims for reimbursement of state-mandated local program costs and interest in chronological order beginning with the earliest claim.  The Controller shall report to each school district . . . the amounts of any claims and interest that are offset from funds provided pursuant to this section, and shall report a summary of the amounts offset for each mandate for each fiscal year to the Department of Finance and the fiscal committees of the Legislature."  (Gov. Code, §§ 17581.8, subd. (c), 17581.9, subd. (d), 17581.95, subd. (d).)

5

On December 2, 2016, the Districts filed a petition for writ of mandate and complaint for declaratory and injunctive relief in the San Diego Superior Court against the State of California, the Controller, and the Director of the Department of Finance. The petition and complaint challenged the State's practice, under the funding statutes, of deeming general purpose funding provided to all school districts as subvention for those districts with outstanding claims for state-mandated costs. The Districts alleged the funding statutes sought to "accomplish . . . what the voters sought to prevent in article XIII B, section 6," namely, the diversion of hundreds of millions of dollars in general purpose school district funds from local district priorities to cover the costs of state-mandated programs, transferring the fiscal responsibility for the costs from the State to the school districts, which "violat[ed] the constitutional protection" of article XIII B, section 6. They alleged that the three statutes "have been used by the State in an attempt to wipe out nearly $365 [million] in mandated costs otherwise owed to school districts." The Districts alleged: "This accounting maneuver means that funds received by the District must be used to offset costs mandated by the State instead of funding programs to advance the Districts' missions. This is exactly the type of financial burden which the Constitution prohibits the State from shifting to school districts. Under the requirements of the Constitution, the State cannot 'require[] local entities to use their own revenue to pay for [mandated] programs.' "

In the original petition and complaint, the Districts sought judicial declarations that the use of the funding statutes to reduce subvention due to the Districts "violate[d] the protections of article XIII B, section 6." Alleging the defendants' attempt to reduce

6

subvention through the funding statutes violated the Constitution and the Government Code, the Districts sought a peremptory writ of mandate alleging that the defendants had a "clear, present and ministerial duty to not artificially reduce the amount of subvention owing to Districts" and sought to compel the defendants to not reduce subvention "as a result of the appropriation of funds pursuant to [Government Code] sections 17581.8, 17581.9, and 17581.95 and to correct any reductions made to date based on these statutes." The Districts also sought prohibitory and mandatory injunctions "to restrain [defendants] . . . from implementing the portions of [the funding statutes] which require any reduction in the amount of subvention owing to the Districts" and "to require [them] . . . to correct any adjustments in the amount of subvention owing to the Districts made to date pursuant to [the funding statutes]."

Defendants demurred to the complaint on grounds it was time-barred by the 90-day statute of limitations set forth in section 341.5. They pointed out the Districts' petition was filed 158 days after the effective date of Government Code section 17581.95, and approximately 1.5 and 2.5 years respectively after sections 17581.9 and 17581.8 became effective, well after the 90-day limitations period.

Rather than oppose the demurrer, the Districts filed their operative pleading, the first amended petition and complaint, in March 2017. They eliminated the state and the Department of Finance director as parties, and again characterized the Controller's action in offsetting the funding as an "accounting maneuver" or "paper reductions" that sought to "accomplish . . . what the voters sought to prevent in article XIII B, section 6." The Districts sought declaratory and injunctive relief, as well as a peremptory writ of

7

mandate. Specifically, they asked for a determination of their rights and duties and judicial declarations (1) of the amounts of subvention due them; (2) that the amounts of subvention due the Districts could only be reduced by reimbursement provided by law; and (3) that "any act by [the Controller] to otherwise reduce the amounts of subvention due to the Districts is unlawful." The Districts asked the court to issue a peremptory writ of mandate to compel the Controller "to not unlawfully artificially reduce the amount of subvention owing to the Districts," "to correct any unlawful reductions to the amount of subvention owing to Districts" and "to issue correct reports of the amount still owed to the Districts." They asked for a prohibitory injunction to restrain the Controller from (1) artificially reducing the amount of subvention owed them and (2) refusing to allocate future State reimbursement to the Districts for costs associated with state-mandated programs in amounts less than what was legally due. They sought a mandatory injunction to require the Controller to correct any adjustments in the amount of subvention owed to them.

The Controller again demurred, arguing the Districts' challenge was still to the funding statutes, all budget trailer bills, that "related to state funding for" the Districts and other local school districts, and thus fell within the plain language of section 341.5. She argued that the Districts' challenge was necessarily on constitutional grounds; that they "cannot obtain the relief they seek absent a successful constitutional challenge, given that these three sections expressly require the reductions in mandates claims that the Petition targets." The Controller further argued the petition did not state a claim on which relief could be granted in that (1) the petition did not identify any ministerial duty owed to the

8

Districts by the Controller to warrant a writ of mandate; and (2) declaratory relief was not available to challenge the Controller's administrative actions.

In opposition, the Districts argued that section 341.5 did not apply to the matter based on its plain language and intent. In part, they argued their action did not "solely" challenge the constitutionality of any statute related to state funding, but challenged the lawfulness of the Controller's actions relating to subvention, which was not normally considered state funding. The Districts asked the trial court to take judicial notice of other court rulings, notices of apportionment issued by the California Department of Education, reports of the Controller's office and various items of legislative history.

The trial court sustained the demurrer without leave to amend, ruling all causes of action were time-barred and the Districts did not refute the futility of leave to amend. The Districts filed this appeal.[5]

## DISCUSSION

### I. *Legal Standards for Demurrer Based on Bar of the Statute of Limitations*

"The application of the statute of limitations on undisputed facts is a purely legal question [citation]; accordingly, we review the lower courts' rulings de novo. We must take the allegations of the operative complaint as true and consider whether the facts

---

[5]     The Districts filed their notice of appeal from the July 14, 2017 minute order sustaining the demurrer without leave to amend, but requested that their notice of appeal "be considered filed immediately after entry of the proposed judgment previously submitted to the Superior Court by the parties." Thereafter, the trial court entered a judgment of dismissal. To the extent the notice of appeal was premature, we will treat it as taken from the ensuing judgment of dismissal. (Cal. Rules of Court, rule 8.308(c); see *Fuller v. First Franklin Financial Corp.* (2013) 216 Cal.App.4th 955, 959.)

alleged establish [the Districts'] claim[s are] barred as a matter of law." (*Aryeh v. Canon Business Solutions, Inc.* (2013) 55 Cal.4th 1185, 1191; see *Citizens for Beach Rights v. City of San Diego* (2017) 17 Cal.App.5th 230, 237-238.) " ' " 'A demurrer based on a statute of limitations will not lie where the action may be, but is not necessarily, barred. [Citation.] In order for the bar . . . to be raised by demurrer, the defect must clearly and affirmatively appear on the face of the complaint; it is not enough that the complaint shows that the action may be barred.' " ' " (*Lee v. Hanley* (2015) 61 Cal.4th 1225, 1232-1233.)

When a trial court sustains a demurrer without leave to amend, we assess that decision for abuse of discretion, which is abused if there is a reasonable possibility that the defect can be cured by amendment. (*Zelig v. County of Los Angeles* (2002) 27 Cal.4th 1112, 1126.)

## II.  *Section 341.5*

At issue is whether the short 90-day statute of limitations of section 341.5 applies to bar the Districts' first amended petition and complaint.  The sole question is whether the claims in that pleading are the sort of constitutional challenges encompassed by that statute's provisions.  To answer, we first examine the statute.

Section 341.5 states in part:  "Notwithstanding any other provision of law, any action or proceeding in which a . . . school district . . . or any other local agency is a plaintiff or petitioner, that is brought against the State of California challenging the constitutionality of any statute relating to state funding for . . . school districts . . . or other local agencies, . . . shall be commenced within 90 days of the effective date of the statute

10

at issue in the action." The statute further provides that "[f]or purposes of this section, 'State of California' means the State of California itself, or any of its agencies, departments, commissions, boards, or public officials."

The Legislature added section 341.5 via a budget trailer bill, Assembly Bill No. 860, in response to lawsuits by local officials against the state that raised constitutional objections to the Legislature and Governor's shift of local property tax revenues from cities and other local governments to schools and community college districts. (Assem. Com. on Budget and Fiscal Review, 3d reading analysis of AB 860, July 4, 1994, p. 2.) The bill was approved by the Governor in 1994 as urgency legislation[6] and became effective immediately on July 11, 1994. (Assem. Bill No. 860, chaptered as Stats. 1994, ch. 155, § 1, amended by Stats. 1994, ch. 156 (Sen. Bill No. 2127), § 1, eff. July 11, 1994.) The committee discussion states in part: "To implement the 1992-93 and 1993-94 State Budgets, the Legislature and the Governor shifted $3.9 billion in local property tax revenues from cities, counties, special districts, and redevelopment agencies to schools and community college districts. Local officials filed several suits against the state, raising constitutional objections to the property tax shifts. Although the Attorney General successfully defended the state government, his staff had to fight simultaneous suits in several counties. [¶] . . . Current law does not set a specific deadline for filing suits to challenge legislation affecting state funding for local governments. Assembly

---

6        " ' " ' "Under the California Constitution, a statute enacted at a regular session of the Legislature generally becomes effective on January 1 of the year following its enactment except where the statute is passed as an urgency measure and becomes effective sooner." ' " ' " (*People v. Monk* (2018) 21 Cal.App.5th Supp. 1, 5.)

11

Bill 860 sets a [90-day][7] statute of limitations for filing a lawsuit against the State of California that challenges the constitutionality of statutes affecting state funding for counties, cities, school districts, special districts, and other local agencies." (Assem. Com. on Budget and Fiscal Review, 3d reading analysis of AB 860, July 4, 1994, p. 2.) AB 860 also made other changes to the Revenue and Taxation Code relating to property tax revenue transfers and offsets. (See Concurrence in Senate Amendments of AB 860, July 4, 1994, pp. 5-6; Legis. Counsel's Dig., Assem. Bill No. 860, Stats. 1994, ch. 155, pp. 1-2.)

"In cases involving statutory interpretation, our ' " 'fundamental task . . . is to determine the Legislature's intent so as to effectuate the law's purpose.' " [Citation.] " 'If the statute's text evinces an unmistakable plain meaning, we need go no further.' " [Citation.]' [Citation.] 'We construe statutory language in the context of the statutory framework, seeking to discern the statute's underlying purpose and to harmonize its different components.' " (*Connor v. First Student, Inc.* (2018) 5 Cal.5th 1026, 1035; *Webb v. City of Riverside* (2018) 23 Cal.App.5th 244, 252.) " '[W]hen the statute's language is ambiguous or susceptible of more than one reasonable interpretation, [the court may] turn to extrinsic aids to assist in interpretation.' . . . 'Where a statute is theoretically capable of more than one construction we choose that which comports with the intent of the Legislature.' " (*Webb*, at p. 252.) But, as stated, " '[w]here the language

---

7    Section 341.5 was amended simultaneously at the time of enactment to change the limitations period from 45 to 90 days. (See Stats. 1994, ch. 156 (S.B. 2127), § 1, eff. July 11, 1994.)

12

[of the statute] is clear, its plain meaning should be followed.' " (*Stockton Citizens for Sensible Planning v. City of Stockton* (2012) 210 Cal.App.4th 1484, 1491.)

Looking first to its words, section 341.5 governs "any action or proceeding" that "challeng[es] the constitutionality of any statute relating to state funding" for local agencies, including school districts. This language is broad and is applicable to *any* lawsuit whose gravamen is a constitutional challenge to any statute having some connection or association with state funding, no matter the form of the action. (See *Hensler v. City of Glendale* (1994) 8 Cal.4th 1, 22-23 (*Hensler*) [in determining whether a statute of limitations applies court must identify the gravamen of the cause of action; applicability depends on the " 'nature of the right sued upon and not the form of action nor the relief demanded . . . .' "]; *San Diego Unified School Dist. v. County of San Diego* (2009) 170 Cal.App.4th 288, 305-306; *McLeod v. Vista Unified School Dist.* (2008) 158 Cal.App.4th 1156, 1165; *City of Vista v. Robert Thomas Securities, Inc.* (2000) 84 Cal.App.4th 882, 889 ["The statute of limitations that applies to an action is governed by the gravamen of the complaint, not the cause of action pled"].) The Legislature's use of the phrase "relating to" compels our conclusion. (See *Altria Group, Inc. v. Good* (2008) 555 U.S. 70, 85 [meaning of the key phrase "relating to" is broad]; *Morales v. Trans World Airlines*, *Inc.* (1992) 504 U.S. 374, 383–384 [the "ordinary meaning of ['relating to'] is a broad one—'to stand in some relation; to have bearing or concern; to pertain; refer; to bring into association with or connection with,' Black's Law Dictionary 1158 (5th ed. 1979)"]; *Bono v. David* (2007) 147 Cal.App.4th 1055, 1067 [interpreting

13

arbitration clause language " '*any claim* arising from or *related to* this agreement' " as broad].)

Additionally, section 341.5 expressly triggers the short limitations period for a constitutional challenge to a funding statute on the statute's effective date. The patent objective of the Legislature was to ensure that disputes over the constitutional validity of local agency funding statutes be judicially resolved as expeditiously as possible. (Accord, *McLeod v. Vista Unified School Dist.* (2008) 158 Cal.App.4th 1156, 1166 [observing that the 60-day statute of limitations of validation or reverse validation actions " 'further the important public policy of speedy determination of the public agency's action' "].) Thus, the Legislature sought to force local agencies to promptly bring actions "to challenge [the constitutionality of] legislation affecting state funding for local governments." (Assem. Com. on Budget and Fiscal Review, 3d reading analysis of AB 860, July 4, 1994, p. 2.) This purpose justifies a broad reading of the statute: " 'The rule of narrowly interpreting statutes of limitation [citation] does not apply when the statute is unambiguous and reflects a policy judgment by the Legislature . . . that litigation involving [constitutional validity of a statute relating to school district funding] must be resolved as quickly as possible consistent with due process.' " (*Aiuto v. City and County of San Francisco* (2011) 201 Cal.App.4th 1347, 1360 [addressing the 90-day statute of limitations applying to "[a]ny action or proceeding" challenging "the decision of an advisory agency, appeal board, or legislative body concerning a subdivision"], quoting *Maginn v. City of Glendale* (1999) 72 Cal.App.4th 1102, 1109-1110; see also *Hensler*, *supra*, 8 Cal.4th at p. 23 [same].)

14

### III.  *The Districts' Arguments*

The Districts make several points before getting to the merits of why their action is not time-barred.  They maintain they have expended millions of dollars to implement state mandates, they have complied with the procedural process to submit claims to the Controller for subvention as stated in *Kinlaw v. State of California* (1991) 54 Cal.3d 326, and they are entitled to subvention under article XIII B, section 6.  They repeat that the Controller has reduced subvention owed to them based on the appropriation of one-time, general funds to the Superintendent of Public Instruction for allocation to the local education agencies under the funding statutes at issue, which operate "without any relation to the amount of mandate subvention owed to any particular school district and included allocations to charter schools which are not even eligible for reimbursement of costs associated with State-mandated programs."  (Italics omitted.)  The Districts assert that while the statutes became effective in June 2014, June 2015, and June 2016 respectfully, the Controller did not publicly report, and they were not aware of, any reductions until almost two years after they were enacted.

The Districts state they "do not take issue with the appropriation or 'one-time' amounts appropriated under Government Code sections 17581.9, 17581.8 and 17581.95."  Instead, they maintain they "challenge the Controller's actions to reduce the amount of subvention due to the School Districts based on the amounts allocated to each School District by the [Superintendent of Public Instruction] from the appropriations made by these statutes."  Again characterizing the action as an "accounting maneuver," they argue the Controller "double-counts the unrestricted funds appropriated by the statutes, in

15

effect, eliminating the subvention due to the School Districts." They argue that by enacting article XIII B, section 6, the voters sought to protect the financial sovereignty of school districts from such maneuvers.

More specifically to the correctness of the judgment of dismissal based on section 341.5's statute of limitations, the Districts repeat their arguments below that the statute does not apply because (1) their challenge centers on subvention, which is "separate and distinct" from state funding referenced in section 341.5, and the court erred by reading the word subvention into section 341.5; (2) the gravamen of their challenge targets the actions of the Controller, who was required to follow the "elaborate mandate process created to implement an initiative by the people of California"; (3) they assert an "as-applied" challenge, which renders section 341.5 inapplicable, akin to the statute of limitations found inapplicable in *Travis v. County of Santa Cruz* (2004) 33 Cal.4th 757; (4) applying the 90-day limitation imposed by section 341.5 leads to the "absurd" result that would deny public schools court review of any legislation with a monetary or financial impact on the state; (5) the Districts' cause of action did not accrue until years after the funding statutes were enacted, when the Controller released her reports detailing the amounts of reduced subvention, and the circumstances show "continuing violation[s] every time reports are issued"; (6) any complaint regarding subvention filed within 90 days of the budget bills' enactment would have lacked concrete facts and sought an advisory opinion; and (7) section 341.5 is inconsistent with the comprehensive statutory mandate reimbursement process.

16

IV. *Analysis*

The Districts make no reasoned argument that their action against the Controller is not one against the state within the meaning of section 341.5, which defines the State as including "any . . . public official."  (§ 341.5.)  And the Districts concede that the funding statutes "appropriated funds to be disbursed to all local educational agencies, including . . . school districts, . . . through appropriations to the [Superintendent of Public Instruction] . . . ."  There can be no meaningful dispute that the funding statutes under which the Controller took her action are laws "relating to state funding for . . . school districts . . . ."  Each law appropriates specific funds from the state's general fund to be allocated to specified local agencies, including school districts.  (See Gov. Code, §§ 17581.8, subd. (a)(1) ["For the 2014-15 fiscal year, the sum of two hundred eighty-seven million one hundred forty-nine thousand dollars ($287,149,000) is hereby appropriated from the General Fund to the Superintendent of Public Instruction for allocation to school districts in the manner, and for the purposes, set forth in this section"]; 17581.9, subd. (a)(1) [appropriating over $3 billion from the general fund to the Superintendent of Public Instruction], 17581.95, subd. (a)(1) [appropriating over nine hundred thousand dollars from the General Fund to the State Department of Education for transfer by the Controller to the State School Fund for allocation by the Superintendent of Public Instruction].)

As we have summarized above, the Districts' petition and complaint alleges that the Controller is taking yet another action (in a "long line of such efforts," some of which were successfully challenged, see *California School Boards Association v. State of*

17

*California*, *supra*, 192 Cal.App.4th at p. 787) to evade her obligation to reimburse the District for state-mandated programs or services, a duty that is enshrined in article XIII B, section 6. (*California School Boards Association*, at pp. 785-786.) Their pleading makes clear that the mechanism used by the Controller to make the reduction is the offset described in the funding statutes, that is, the application of the general one-time funding allocations to first satisfy the Districts' outstanding claims for subvention. The funding statutes give the Controller no discretion but to apply the funding in such manner. (Gov. Code, §§ 17581.8, subd. (c), 17581.9, subd. (d), 17581.95, subd. (d) ["Allocations made pursuant to this section *shall* first satisfy any outstanding claims pursuant to Section 6 of Article XIII B of the California Constitution for reimbursement of state-mandated local program costs for any fiscal year. . . . The Controller *shall* apply amounts received by each school district . . . against any balances of unpaid claims for reimbursement of state-mandated local program costs and interest in chronological order beginning with the earliest claim," italics added].)

We are unable to divorce the Controller's action from her statutory obligation to take that action under the funding statutes as the Districts would have us do. As stated, we look to the gravamen of the Districts' petition and complaint, the "substance of the action, rather than the form of the pleading or the labels employed" (*Hensler*, *supra*, 8 Cal.4th at pp. 22-23; *Professional Collection Consultants v. Lauron* (2017) 8 Cal.App.5th 958, 967-968) to determine whether section 341.5 applies. Doing so, we conclude the gravamen of the challenge in the Districts' first amended petition and complaint is no different than their straightforward constitutional challenges to the funding statutes

18

asserted in the original pleading. By challenging the Controller's actions—compelled by and taken under the funding statutes—as contrary to her constitutional duty to pay subvention, the Districts in substance and effect are advancing a challenge to the constitutionality of the funding statutes themselves. They were therefore obligated to make their challenge within 90 days of the funding statutes' enactment under section 341.5, but did not do so. Hence, the action is barred by the statute of limitations.

None of the Districts' arguments convince us otherwise. Their assertion that subvention is distinct or separate from state funding—even if true—misses the mark. They point out that neither the language of section 341.5 nor its legislative history reference subvention, arguing it was not the Legislature's intent to "limit subvention for claims regarding reimbursement of mandated costs." They also suggest the Legislature only sought to place a short limitations period for suits involving property tax *revenue* shifts. Whatever the impetus for the Legislature's action, section 341.5's language is not so limited. The inquiry is not whether the Legislature specifically intended the short 90-day statute of limitations in 341.5 to apply to challenges involving or relating to subvention, but whether the Districts' challenge to the Controller's action falls within the scope of the law the Legislature ultimately wrote, that is, whether the challenge is in effect or substance a constitutional challenge to a statute relating to state funding for the Districts. As we have explained, the Districts' first amended petition and complaint makes such a challenge.

It is of no import to this case that section 341.5's limitations period was not at issue in *California School Boards Association v. State of California*, *supra*, 192

19

Cal.App.4th 770. In *California School Boards Association*, this court invalidated the State's years-long practice of deferred funding of state mandates (appropriating $1,000 for each mandated program rather than the full amount of the programs' total cost, with the intention of paying the mandate in full with interest at some unspecified time). (*Id.* at p. 787.) Even assuming the school board association's action in that case asserted a constitutional challenge to a statute relating to state funding, parties can waive any applicable statute of limitations defense by failing to raise it at the appropriate time. (See *County of Los Angeles v. Commission on State Mandates* (2007) 150 Cal.App.4th 898, 904 [declining to consider whether a county's constitutional challenge to Government Code section 17516c was time-barred by section 341.5: "This statute of limitations defense, which should have been raised before the trial court, is not cognizable on this appeal"]; *Moore v. City of Los Angeles* (2007) 156 Cal.App.4th 373, 382 [" 'It is well established that the statute of limitations is a personal privilege which is waived unless asserted at the proper time and in the proper manner, whether it be a general statute of limitations or one relating to a special proceeding' "]; see also *Salton Bay Marina, Inc. v. Imperial Irrigation Dist.* (1985) 172 Cal.App.3d 914, 940, fn. 4 ["In civil actions, the statute of limitations is a personal privilege and must be affirmatively asserted or it is deemed waived"].) That this court in *California School Boards Association* omitted any discussion of section 341.5's limitations period says nothing about whether the statute of limitations applies to the Districts' present action.

We are not persuaded by the Districts' argument that their first amended petition and complaint falls outside section 341.5 because it merely targets the Controller's action

20

in failing to comply with the subvention reimbursement process. They maintain their pleading "asked the trial court to determine whether the Controller was required to follow the elaborate mandate process created to implement an initiative by the people of California . . . or whether the Controller can circumvent the entire mandate structure and simply 'erase' the stated debt due to the . . . Districts." In this way, the Districts argue, they are "challenging the statutes 'as applied' to the . . . Districts through the actions of the Controller . . . ."

Section 341.5 makes no distinction between facial and as-applied challenges to a funding statute. Both are constitutional challenges. (See *In re Taylor* (2015) 60 Cal.4th 1019, 1039 [" '[A]s-applied challenges are the basic building blocks of constitutional adjudication' "]; *Tobe v. City of Santa Ana* (1995) 9 Cal.4th 1069, 1084 [characterizing an as-applied challenge as a claim that a facially valid statute or ordinance "has been applied in a constitutionally impermissible manner to the defendant"]; *Pfeifer v. John Crane, Inc.* (2013) 220 Cal.App.4th 1270, 1310 ["Generally, '[a] challenge to the constitutional validity of a statute may be of two types: a facial challenge and an as-applied challenge' "].)

The Districts rely on *Travis v. County of Santa Cruz*, *supra*, 33 Cal.4th 757 as suggesting section 341.5 should not apply even if they raise a constitutional challenge to the funding statutes' application to them. They argue section 341.5 is akin to the 90-day statute of limitations in Government Code section 65009, subdivision (c)(1)(B) at issue in that case, applicable to actions challenging "the decision of a legislative body to adopt or amend a zoning ordinance." (Gov. Code, § 65009, subd. (c)(1)(B).) *Travis* involved two

21

property owners' challenge to an ordinance that they claimed violated state law, was preempted by state and federal law, and unconstitutionally took their property without compensation by imposing occupancy and rent restrictions as permit conditions. (*Id*. at pp. 762, 764.) The trial court ruled all of their claims were time-barred, and the appellate court affirmed. (*Id*. at p. 765.) Pointing out one of the owners had complained of injury *both* from imposition of the permit conditions and the ordinance's enactment (*id*. at p. 767), the California Supreme Court held the action in part was timely within a *different* section of the statute, Government Code section 65009, subdivision (c)(1)(E), governing actions to "determine the . . . validity" of permit conditions and to "void or annul" those decisions. (*Id*. at p. 766.) Because some claims were timely under the latter section as brought within 90 days of the county's final administrative action, the court ruled the untimely claims did not remove the action from the purview of section (c)(1)(E) of Government Code section 65009. (*Id*. at p. 768.) Thus, unlike section 341.5, under which the sole trigger of the limitations period is a challenged state funding statute's enactment, at issue in *Travis* was a statute whose 90-day limitations period was triggered differently depending on whether the challenge was to enactment of an ordinance or to imposition of conditions under the ordinance. (See *County of Sonoma v. Superior Court* (2010) 190 Cal.App.4th 1312, 1324.)

Further, in *Travis*, the court observed that in the context of local government development fees, courts had distinguished between a "legislative decision" adopting a generally applicable fee and an "adjudicatory decision" imposing the fee on a particular development. (*Travis v. County of Santa Cruz*, *supra*, 33 Cal.4th at p. 769.) The court

22

stated that to the extent the plaintiff in that case sought a finding that the ordinance could not be applied against him and removal of the conditions, his challenge was to the County's adjudicatory decision coming within the limitations period of Government Code section 65009, subdivision (c)(1)(E), triggered by the final administrative action. (*Ibid*.) It pointed out that in *Utility Cost Management v. Indian Wells Valley Water District* (2001) 26 Cal.4th 1185, it had held a fee imposition decision would be deemed legislative rather than adjudicatory because "the fee ordinance was expressly applicable to the plaintiff and 'calculation of the fees was a purely ministerial act—assertedly performed by a computer—based on the formulas set forth in the fee legislation.' " (*Travis*, at p. 770, quoting *Utility Cost Management*, at p. 1194.) The court distinguished such a situation from that involved in *Travis*, in which the county official's decision "required more than a purely mechanical or arithmetic process on their part." (*Travis*, at p. 770.)

The *Travis* court criticized as unjust the county's position that imposition of conditions under a preempted or unconstitutional zoning ordinance could only be challenged within 90 days of the ordinance's enactment, stating if it were to accept such a position, "a property owner subjected to a regulatory taking through application of the ordinance against his or her property would be without remedy unless the owner had had the foresight to challenge the ordinance when it was enacted, possibly years or even decades before it was used against the property. . . . The Legislature intended [Government Code] section 65009 to provide certainty to local governments [citation], but not, we think, at the expense of a fair and reasonable opportunity to challenge an

23

invalid ordinance when it is enforced against one's property." (*Travis v. County of Santa Cruz, supra*, 33 Cal.4th at pp. 770-771.)

*Travis* compels us to reject the Districts' assertion that their operative pleading makes an as-applied challenge.[8]  It is not the label used by the Districts, but the nature or gravamen of its action that controls.  (*County of Sonoma v. Superior Court, supra*, 190 Cal.App.4th at p. 1330.)  Here, the Districts generally challenge the Controller's act of applying general funds to satisfy outstanding subvention claims; the claim is that the Controller is not permitted to engage in that offset at all, not that the Controller somehow reduced the balances in the wrong amounts or made some procedural or accounting error in performing the reduction.  When the Legislature enacted funding statutes mandating that allocations of the general funds "shall first satisfy any outstanding claims pursuant to Section 6 of Article XIII B of the California Constitution for reimbursement of state-mandated local program costs for any fiscal year" (Gov. Code, §§ 17581.8, subd. (c), 17581.9, subd. (d), 17581.95, subd. (d)) without discretion on the part of the Controller, the Districts were put on notice that the laws on their face would affect their right to reimbursement under section 6, article XIIIB.  As a result, this is not the sort of unfair scenario described in *Travis v. City of Santa Cruz, supra*, 33 Cal.4th 757, in which the Districts would not have a fair and reasonable opportunity to challenge the validity of the Controller's mandatory action in satisfying subvention obligations with general funds.  And it is consistent with the policy to protect the state and its officers from the fiscal

---

8      Because we reach this conclusion, we need not decide the fairness of applying section 341.5's 90-day limitations period to a true as-applied challenge.

uncertainty that results when a plaintiff can challenge the constitutional validity of a statute relating to state funding years after it is enacted. (See *Hensler*, *supra*, 8 Cal.4th at pp. 27-28; *Olive Lane Industrial Park, LLC v. County of San Diego* (2014) 227 Cal.App.4th 1480, 1490 [involving four-year deadline for filing for eminent domain replacement property tax exclusion; pointing out in the context of tax collection that courts have recognized time limitations serve the important policy interests of promoting stability and facilitating fiscal planning by governmental agencies and "[i]mposition of reasonable time limitations avoids 'the absurdity of allowing suits to be filed centuries after the claim on which the suit was based arose' "].) The Districts' concern that application of the statute to them would create unfair or "absurd" results "goes fundamentally to the *wisdom* of the statute of limitations, not its *applicability*." (*Utility Cost Management v. Indian Wells Valley Water District*, *supra*, 26 Cal.4th at p. 1197.) " 'Courts have nothing to do with the wisdom of laws or regulations . . . .' " (*Santa Monica Beach, Ltd. v. Superior Court* (1999) 19 Cal.4th 952, 962.)

We likewise reject the Districts' contention that their causes of action did not accrue until the Controller released her reports detailing the offsets, analogous to the causes of action at issue in *Howard Jarvis Taxpayers Association v. City of La Habra* (2001) 25 Cal.4th 809. They argue "even if the . . . Districts could have somehow challenged the 'one-time-funding' statutes with respect to subvention based solely on enactment, their injuries did not accrue until the Controller issued the reports showing how the Controller was purportedly applying these statutes, *and what subvention owed to . . . Districts by the State was 'erased.'* . . . As in *Howard Jarvis*, a continuing violation

25

occurs every time a new Controller's report is issued, which further 'erases' the amount of subvention due."  The premise of this contention is that a different statute of limitation permits consideration of some other date of accrual than the effective date of the challenged statute identified in section 341.5.

In *Howard Jarvis*, the California Supreme Court applied the three-year limitations period for actions on a liability created by statute (§ 338, subd. (a)), and limited its holding to cases where that limitations period applied "and no other statute . . . provides differently."  (*Howard Jarvis Taxpayers Association v. City of La Habra*, *supra*, 25 Cal.4th at p. 825; see also *Reid v. City of San Diego* (2018) 24 Cal.App.5th 343, 361.)  In *Reid*, this court explained that "if another statute provides a limitation period triggered by a specified event, the continuous accrual theory does not apply." (*Reid*, at p. 361, citing *Utility Cost Management v. Indian Wells Valley Water Dist.*, *supra*, 26 Cal.4th at p. 1195 [express language of Government Code section 66022, stating the statute runs from the "effective date" of fee legislation, controls over Code of Civil Procedure section 338] & *Barratt American Inc. v. City of San Diego* (2004) 117 Cal.App.4th 809, 819-820; see also *Hensler*, *supra*, 8 Cal.4th at p. 22 [three-year statute of limitations of section 338 is "applicable only if no 'different limitation is prescribed by statute' "])  "[W]e will not adopt a different date of accrual if a statute prescribes the date of accrual."  (*Barratt American*, at p. 820.)  Here, section 341.5 contains express language stating when the statute runs, and it is controlling as to accrual of the Districts' causes of action, which constitute facial challenges to the constitutional validity of the funding statutes.

26

The Districts state the Controller alternately referred to section 341.5 as a statute of limitations and a statute of repose. The Districts' point about this is difficult to glean (a statute of repose applies regardless of injury or accrual, see *McCann v. Foster Wheeler LLC* (2010) 48 Cal.4th 68, 78-79, fn. 2; *PGA West Residential Association v. Hulven International, Inc.* (2017) 14 Cal.App.5th 156, 177, whereas a statute of limitation sets a time limit in which an action must commence once the cause of action accrues, *ibid*.), but they ultimately simply repeat their arguments—which we have rejected above—that their action is not time-barred because they had no way of knowing how "exactly" the funding statutes would be applied by the Controller, or what amounts would be erased. They also argue that any complaint filed within 90 days of the funding statutes' enactment "would have lacked concrete facts" and sought "an advisory opinion . . . ." We cannot agree. The funding statutes gave the Controller no discretion; she was required to make the challenged allocations to subvention for the applicable fiscal years, thus the Districts' constitutional challenge to the funding statute's validity would have presented a concrete and present controversy.

Finally, we are not convinced by the Districts' assertion that applying section 341.5 here would permit the state, via the Controller, to "game" the initiative and mandate process, and would lead to unnecessary and premature filings. They argue the Controller is attempting to avoid the subvention requirement through "alternate means" similar to what this court would not permit in *County of San Diego v. Commission on State Mandates*, *supra*, 7 Cal.App.5th 12. In that case, this court addressed whether Proposition 83's amendments to the Sexually Violent Predators Act (SVPA) constituted a

27

"subsequent change in the law" so as to convert duties imposed on counties by the SVPA from state-mandated duties into duties mandated by the People, and thus no longer reimbursable by the state under article XIIIB, section 6, subdivision (a). (*Id*. at p. 31.) We see nothing analogous in *County of San Diego*, and it does not convince us to engage in policy judgments concerning section 341.5's limitations period. Our analysis is a straightforward interpretation of section 341.5 based on its plain and commonsense meaning and the gravamen of the Districts' petition and complaint.

V. *The Trial Court Properly Denied Leave to Amend*

When a demurrer is sustained without leave to amend, we decide whether there is a reasonable possibility that the plaintiff can cure the defect by amendment. " ' "The burden of proving such reasonable possibility is squarely on the plaintiff." ' [Citation.] Our examination of the complaint is de novo." (*Centinela Freeman Emergency Medical Associates v. Health Net of California*, *Inc.* (2016) 1 Cal.5th 994, 1010; see *T.H. v. Novartis Pharmaceuticals Corporation* (2017) 4 Cal.5th 145, 162.) To meet their burden the Districts must affirmatively demonstrate how the complaint can be amended and how the amendment will cure the deficiencies. (*Heritage Pacific Financial*, *LLC v. Monroy* (2013) 215 Cal.App.4th 972, 994.)

In their opening brief, the Districts argue that this court can decide there is a reasonable possibility they can cure the defects with a second amendment, and that on remand they will "allege facts 'showing entitlement to relief under any possible legal theory.' " But they do not specify the allegations they would add or change to correct any defect, or what additional facts they could allege that would support a cause of action

28

against the Controller. In reply, the Districts maintain they can amend the pleading to address the timing of their knowledge of the Controller's reductions, and also "clarify the crux of their dispute with the Controller and more specifically target the way in which the Controller reduced the subvention owed to the School Districts." They assert they have not conceded that they agree with the manner in which the reductions were calculated, as they have not had the opportunity to engage in discovery on the issue.

Alleging the particular dates on which the Districts obtained the Controller's reports of her actual reductions would not cure the timeliness of their challenge, which targets the funding statutes' mandated allocation of general funds as violating their constitutional right to subvention via the reimbursement process. And, even if an order giving the Districts leave to amend to conduct discovery were permissible, the Districts do not address how allowing discovery would cure the statute of limitations problem apparent in their pleadings. We conclude the Controller's demurrer was properly sustained without leave to amend.

Having upheld the trial court's decision to sustain the Controller's demurrer based on application of the statute of limitations, we need not address the Controller's other alternate arguments as to the Districts' ability to state a claim for a writ of mandate and for declaratory relief.

DISPOSITION

The judgment is affirmed.


                                                                    O'ROURKE, J.

WE CONCUR:


McCONNELL, P. J.


DATO, J.

**CERTIFIED FOR PUBLICATION**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| SAN DIEGO UNIFIED SCHOOL DISTRICT et al., | D072894 |
| Plaintiffs and Appellants, | |
| v. | (Super. Ct. No. 37-2016-00042334-CU-WM-CTL) |
| BETTY YEE, as State Controller, | |
| Defendant and Respondent. | |

THE COURT:

The opinion in this case filed November 30, 2018, was not certified for publication.

IT IS HEREBY CERTIFIED that the opinion meets the standards for publication specified in California Rules of Court, rule 8.1105(c); and ORDERED that the words "Not to Be Published in the Official Reports" appearing on page one of said opinion be deleted and the opinion herein be published in the Official Reports.

_____

McCONNELL, P. J.

Copies to: All parties