[No. S091117. Dec. 17, 2001.]

UTILITY COST MANAGEMENT, Plaintiff and Appellant, v.
INDIAN WELLS VALLEY WATER DISTRICT, Defendant and
Respondent.

**COUNSEL**

Paul G. Kerkorian for Plaintiff and Appellant.

John L. Bukey, Richard L. Hamilton; Somach, Simmons & Dunn, Michael E. Vergara and Erica R. Williams for California School Board Association's Education Legal Alliance as Amicus Curiae on behalf of Plaintiff and Appellant.

James E. Holst, George L. Marchand; and Marcia J. Canning for the Regents of the University of California and University of California Hastings College of the Law as Amici Curiae on behalf of Plaintiff and Appellant.

McMurtrey & Hartsock, Robert W. Hartsock; McCormick, Barstow, Sheppard, Wayte & Carruth, James P. Wagoner, Christopher Lozano and Jay A. Christofferson for Defendant and Respondent.

Lagerlof, Senecal, Bradley, Gosney & Kruse and Thomas S. Bunn III for Association of California Water Agencies as Amicus Curiae on behalf of Defendant and Respondent.

Robert C. Helwick, Craig S. Spencer, Benjamin T. Reyes II; Fox & Sohagi, Margaret Moore Sohagi, Terry Kaufmann Macias, Philip A. Seymour; and Roberta L. Larson for East Bay Municipal Utility District and California Association of Sanitation Agencies as Amici Curiae on behalf of Defendant and Respondent.

Louise H. Renne, City Attorney (San Francisco), Joanne Hoeper, Chief Trial Attorney, and Jason P. Gonzalez, Deputy City Attorney, for the City and County of San Francisco and the Cities of Alameda, Monterey, San Buenaventura, San Luis Obispo, Santa Rosa and Walnut Creek as Amici Curiae on behalf of Defendant and Respondent.

Lemieux & O'Neill and Wayne K. Lemieux for Central Basin Municipal Water District, Foothill Municipal Water District, Las Virgenes Municipal Water District, Littlerock Creek Irrigation District, Palm Ranch Irrigation District, San Gabriel County Water District, Valley County Water District and West Basin Municipal Water District as Amici Curiae on behalf of Defendant and Respondent.

## OPINION

**BROWN, J.**—In this case, we decide whether the 120-day statute of limitations set forth in Government Code section 66022[1] applies to an action by a public agency to recover amounts paid to a public utility for capital improvements. We conclude section 66022 does apply, and therefore appellant's complaint is barred as untimely. Accordingly, we reverse the judgment of the Court of Appeal.

### FACTUAL AND PROCEDURAL BACKGROUND

Utility Cost Management (UCM) is "in the business of reviewing and analyzing utility charges to determine whether there have been overcharges."

---

[1] All further statutory references are to the Government Code unless otherwise indicated.

UCM, as the assignee of Kern Community College District (Kern), brought this action on February 10, 1997, to recover certain alleged overcharges paid by Kern to defendant Indian Wells Valley Water District (Indian Wells). The trial court sustained a series of demurrers and then entered a judgment of dismissal on April 2, 1998. UCM appealed, arguing the trial court erred in sustaining the demurrer to its third amended complaint. Therefore, the third amended complaint is the subject of this appeal.

The complaint alleges that Indian Wells overcharged Kern for water service because some or all of its charges qualified as "capital facilities fees" and, as such, improperly exceeded amounts permissible under section 54999.3. The complaint asserted a cause of action for refund pursuant to section 54999.4, as well as various common law causes of action. The trial court held that the 120-day statute of limitations in section 66022 barred the action, citing *San Marcos Water Dist. v. San Marcos Unified School Dist.* (1987) 190 Cal.App.3d 1083 [235 Cal.Rptr. 827] (*San Marcos II*). Section 66022 provides: "(a) Any judicial action or proceeding to attack, review, set aside, void, or annul an ordinance, resolution, or motion adopting a new fee or service charge, or modifying or amending an existing fee or service charge, adopted by a local agency . . . *shall be commenced within 120 days of the effective date of the ordinance, resolution, or motion.* [¶] . . . [¶] (b) Any action . . . under this section shall be brought [as a validation action under Code of Civil Procedure section 860]. [¶] (c) This section shall apply only to fees, capacity charges, and service charges described in and subject to Sections 66013 and 66014." (Italics added.)

The Court of Appeal reversed, finding section 66022 inapplicable. Among other things, the Court of Appeal characterized the action as one challenging an *adjudicative* decision to impose a fee on a particular water user in a particular case, not a *legislative* decision to set fees at a certain level for an entire class of water users. Therefore, the Court of Appeal reasoned, the action was not one challenging "an ordinance, resolution, or motion," and section 66022 did not apply. The Court of Appeal also focused on the express limitation in section 66022 "to fees . . . and . . . charges described in and subject to Sections 66013 and 66014." (§ 66022, subd. (c).) The court concluded the charges UCM sought to recoup were not described in these sections. In reaching these conclusions, the Court of Appeal expressly rejected the reasoning of *Utility Cost Management v. East Bay Mun. Utility Dist.* (2000) 79 Cal.App.4th 1242 [94 Cal.Rptr.2d 777].

We granted Indian Wells's petition for review and now reverse the judgment of the Court of Appeal.

DISCUSSION

In order to understand fully the issues before the court, we must start with our opinion in *San Marcos Water Dist. v. San Marcos Unified School Dist.* (1986) 42 Cal.3d 154 [228 Cal.Rptr. 47, 720 P.2d 935] (*San Marcos I*), because that decision gave rise to the key statutes (§§ 54999-54999.6) on which UCM relies. In *San Marcos I*, we considered whether certain public utility fees constituted "special assessments" from which public entities are exempt in the absence of " 'a positive legislative authority' " permitting the assessment. (*San Marcos I*, at p. 161, quoting *Inglewood v. County of Los Angeles* (1929) 207 Cal. 697, 704 [280 P. 360] (*Inglewood*).) We concluded that a utility fee or charge constitutes a special assessment, rather than, for example, a user charge, if its purpose is to defray the cost of a capital improvement that directly benefits the property being assessed. (*San Marcos I*, at pp. 161-162, 164-165.) Applying that standard, we found the public utility fees at issue in that case to be special assessments. (*Id.* at p. 165.) We also found no legislative authority for imposing the assessments on public entities (*id.* at pp. 165-167), but we remanded to the Court of Appeal to determine whether a refund was appropriate. (*Id.* at p. 168.)

On remand, the Court of Appeal held that the 120-day statute of limitations, which then was codified as section 54995 but which now appears in section 66022, applied and barred recovery. (*San Marcos II, supra,* 190 Cal.App.3d at p. 1088.) The court reasoned that the Legislature enacted the relatively short 120-day limitations period to give local agencies certainty with respect to the enforceability of their fee resolutions and ordinances and to avoid putting an agency in the position of reimbursing funds that "have long since been expended." (*Id.* at p. 1086.)

In response to our decision in *San Marcos I*, the Legislature adopted the "San Marcos Legislation," providing the authorization for special assessments that we found lacking in that case. (§§ 54999-54999.6; Stats. 1988, ch. 53, § 1, p. 310.) Section 54999.2 authorizes public utilities to impose a "capital facilities fee" on public entities "except as provided in Section 54999.3," and section 54999.1 defines a " 'capital facilities fee' " as "any nondiscriminatory charge to pay the capital cost of a public utility facility." Section 54999.3 enumerates restrictions applicable when a public utility imposes the fees on either a state agency or an educational entity such as Kern. In these circumstances, the fee must be "necessary to defray the *actual construction costs* of that portion of a public utility facility *actually serving*" the agency or educational entity. (§ 54999.3, subd. (a), italics added.) Moreover, the fee may not be imposed at all if successfully "protested or

challenged pursuant to law prior to January 1, 1987," and when it may be imposed, it may not exceed the amount charged prior to our decision in *San Marcos I* (July 21, 1986), as adjusted for inflation (unless the parties agree to a higher fee). (§ 54999.3, subds. (a), (b).) In addition, upon request (or in the event of an increase in the fee), the public utility must "identify the amount of the capital facilities fee" and "has the burden of producing evidence to establish [the propriety of] the . . . fee." (§ 54999.3, subd. (c).)

Though there was no legislative authority for imposing capital facilities fees on public entities prior to the San Marcos Legislation, section 54999.4 strictly limits refund actions for recouping fees paid prior to the effective date of the legislation, which was March 24, 1988. These restrictions were presumably adopted because of legislative concern for "the fiscal stability and service capabilities of . . . public utility service agencies which have in good faith collected and spent these fees." (§ 54999.) Under section 54999.4, fees paid before our decision in *San Marcos I* (July 21, 1986) are not subject to refund at all, unless "protested or challenged pursuant to law on or before January 1, 1987," and fees paid after our decision (but before the effective date of the legislation) are subject to refund only if they exceeded amounts permissible under section 54999.3. Thus, the Legislature expressly intended the authorizations and restrictions set forth in the San Marcos Legislation to have a retroactive effect.

The San Marcos Legislation does not expressly state what statute of limitations applies to refund actions. Indian Wells argues that the trial court was correct to apply the 120-day statute of limitations found in section 66022, noting that the court in *San Marcos II, supra,* 190 Cal.App.3d 1083, had applied that provision to a refund action prior to the San Marcos Legislation and the Legislature had implicitly ratified that decision by not stating a different limitations period. The 120-day limitations period is particularly restrictive not only because it is relatively short, but also because it runs from the effective date of any ordinance, resolution, or motion imposing fees, not from the date the fee is actually charged to the customer. Therefore, application of this provision would require state agencies and educational entities to keep close watch on public utilities at the time they adopt their rate ordinances and to bring prompt challenges, perhaps without a final determination that the fee is excessive or that the agency or educational entity is even subject to the fee.

On the other hand, UCM stresses that the right to impose capital facilities fees was created by the San Marcos Legislation, and therefore, UCM argues, a refund action for recouping excessive fees is "an action upon a liability

created by statute" to which the three-year statute of limitations found in Code of Civil Procedure section 338, subdivision (a) applies. UCM asserts in the alternative that the four-year catchall statute of limitations found in Code of Civil Procedure section 343 applies. Obviously, either of these longer limitations periods would significantly increase the liability of public utilities for improperly imposed fees, and their application would mean the trial court in this case erred in sustaining Indian Wells's demurrer to the third amended complaint.

Section 66022 is part of the Mitigation Fee Act (§§ 66000-66025; Stats. 1987, ch. 927, § 1, p. 3131), which, like the San Marcos Legislation, places various limits on the fees and charges that local agencies (including utility districts) can impose on persons or property holders. Most of the Mitigation Fee Act concerns itself with development fees; that is, fees imposed on development projects in order to finance public improvements or programs that bear a "reasonable relationship" to the development at issue. (See, e.g., § 66001.) Nevertheless, the Mitigation Fee Act also addresses itself to some fees or charges that do not necessarily relate to a development project. For example, section 66013 places limits on "fees for water connections or sewer connections, or . . . *capacity charges*." (§ 66013, subd. (a), italics added.) Connection fees might well apply to development projects, but a "capacity charge" is simply a "charge[] for facilities [existing or to be constructed] that are of benefit to the person or property being charged" (§ 66013, subd. (b)(3)), and therefore might apply regardless of whether a development project is at issue. A capacity charge might, for example, include a charge to all property holders in an area (not just development projects) to pay off bonds issued to construct a water pipeline serving the area.

With this background, we can begin to unravel the issue presented here. At the outset, we note that the plain meaning of section 66022 supports its application to UCM's claims. As noted, section 66022 refers to "[a]ny judicial action or proceeding to attack, review, set aside, void, or annul an ordinance, resolution, or motion adopting a new fee or service charge, or modifying or amending an existing fee or service charge, adopted by a local agency." (§ 66022, subd. (a).) The use of the word "any" and the inclusion of several disjunctives to link essentially synonymous words all serve to broaden the applicability of the provision. Moreover, when the Legislature first adopted the San Marcos Legislation, the text of section 66022 was codified as section 54995, which was part of chapter 13.5 of title 5, division 2, part 1 of the Government Code, entitled "Limitation of Actions to Review Local Agency Fees and Charges." (Stats. 1982, ch. 289, § 5, p. 929.) This chapter title suggests the Legislature intended former section 54995 (now

section 66022) to apply to refund actions like this one, because this litigation is clearly an "action to review local agency fees." Finally, it bears some significance that the Legislature adopted the San Marcos Legislation as the very next chapter in the same part of the Government Code as these limitations provisions. (Stats. 1988, ch. 53, § 1, p. 310.)

Moreover, prior to enactment of the San Marcos Legislation, the Court of Appeal had already found the 120-day statute of limitations applicable to refund actions analogous to this one. (*San Marcos II, supra*, 190 Cal.App.3d 1083.) The San Marcos Legislation is therefore notable for its failure to designate a different statute of limitations. In addition, after the Court of Appeal decided *San Marcos II*, the Legislature repealed section 54995, which contained the predecessor version of the 120-day statute of limitations, and reenacted the same provision, without change, as subdivision (a) of section 66022. (Stats. 1990, ch. 1572, § 4, p. 7494; *id.*, § 22, pp. 7505-7506.) In so doing, the Legislature implicitly ratified the Court of Appeal's decision finding that statute applicable to refund actions such as this one. (See, e.g., *People v. Ledesma* (1997) 16 Cal.4th 90, 100-101 [65 Cal.Rptr.2d 610, 939 P.2d 1310]; *People v. Bouzas* (1991) 53 Cal.3d 467, 475 [279 Cal.Rptr. 847, 807 P.2d 1076].)

UCM argues, however, that section 66022 is inapplicable by its terms because the fees UCM seeks to recoup are not described in and subject to section 66013 or 66014. (See § 66022, subd. (c).) We disagree. The fees at issue here, to be recoverable at all, necessarily constitute special assessments in excess of what the San Marcos Legislation permits (*San Marcos I, supra*, 42 Cal.3d at p. 161; see also *Inglewood, supra*, 207 Cal. at p. 704), and according to the definition we enunciated in *San Marcos I*, a fee constitutes a special assessment only if its purpose is to defray the cost of "capital improvements" that directly benefit the property. (*San Marcos I*, at p. 165; see also *id.* at pp. 161, 162.) This description places these fees directly within the definition of "capacity charges" that are subject to section 66013. Section 66013 defines " '[c]apacity charges' " as "charges for facilities [existing or] to be constructed . . . that are of benefit to the person or property being charged" (§ 66013, subd. (b)(3)), and there can be no doubt that the term "facilities" in this context includes the sort of "capital improvements" to which we were referring in *San Marcos I*. Indeed, the Mitigation Fee Act, of which section 66013 is a part, expressly defines "public facilities" as including "public *improvements*, public services and community amenities." (§ 66000, subd. (d), italics added.) Therefore, under the definition of special assessment we adopted in *San Marcos I*, the fees UCM seeks to recoup are unquestionably "described in and subject to" section 66013. (§ 66022, subd. (c).)

UCM, however, repeatedly insists that the fees are subject to *the San Marcos Legislation*, not section 66013. We agree that the fees at issue here are subject to the San Marcos Legislation, but we do not see why they cannot also be subject to section 66013, and UCM does not explain why. Instead, UCM merely points out that its complaint does not allege a violation of section 66013, a fact that we find irrelevant. Significantly, the phrase *subject to* does not mean *violative of* or *exceeding the limit set forth in*, but merely *governed by*. (See Webster's 10th Collegiate Dict. (1993) p. 1172.) We see no reason why a fee cannot be subject to the restrictions stated in section 66013, and not in breach of those restrictions. Similarly, though section 66022 makes explicitly clear that it "appl[ies] only to fees . . . described in and subject to Sections 66013 and 66014" (§ 66022, subd. (c)), it does not state or suggest that it applies only to refund actions *predicated upon* those sections.

UCM also notes that in 1990, when the Legislature repealed former section 54991 and reenacted the same language as part of section 66013, it stated in an uncodified section of the bill that "nothing in this bill shall alter the provisions of [the San Marcos Legislation]." (Stats. 1990, ch. 1572, § 29, p. 7512.) The Legislature apparently added this provision in response to a letter from the University of California, in which the university asked for an amendment stating that section 66013 does not "apply to . . . [f]ees described in" the San Marcos Legislation. UCM concludes that the Legislature adopted the university's request, and therefore that section 66013 does not apply to fees like those at issue here that are subject to the San Marcos Legislation.

In making this argument, UCM attempts a little lawyerly sleight of hand, quietly interposing the university's word "apply" for the Legislature's word "alter," though all the time purporting to remain loyal to the statutory text. The exact nature of the University of California's concern is unclear from the content of its short letter, but whatever that concern may have been, the Legislature saw fit merely to say that section 66013 does not "alter" the San Marcos Legislation. (Stats. 1990, ch. 1572, § 29, p. 7512.) We can infer, then, that section 66013 may, in at least some cases, *apply* to fees subject to the San Marcos Legislation, so long as it is not construed as altering that legislation. Here, for example, the fees at issue are subject to both the San Marcos Legislation and section 66013, but to the extent there is a conflict between the two statutory schemes, the San Marcos Legislation is controlling.

We conclude therefore that the fees UCM seeks to recoup are described in and subject to section 66013, and therefore the restriction set forth in subdivision (c) of section 66022 is satisfied.

UCM also relies on a distinction the court drew in *N.T. Hill Inc. v. City of Fresno* (1999) 72 Cal.App.4th 977 [85 Cal.Rptr.2d 562] (*N.T. Hill*) between adjudicative and legislative decisions. The Mitigation Fee Act includes two provisions limiting the time within which actions may be brought; one is section 66022, which is at issue here, and the other is section 66020. Facially, these provisions overlap to a certain extent, and to resolve the conflict, the *N.T. Hill* court concluded the 120-day statute of limitations in section 66022 applies to suits challenging *legislative* decisions, whereas the 180-day statute of limitations in section 66020 applies to suits challenging *adjudicative* decisions. In the former situation, the fundamental validity of the legislation enacting the fee is at issue, whereas in the latter situation, the propriety of the fee legislation is not questioned, but the *application* of the fee legislation to a *specific* development is. (*N.T. Hill*, at pp. 986-987.) UCM argues it is challenging the application of Indian Wells's fee ordinances to Kern, not the basic validity of the ordinances, and hence it is challenging an adjudicative decision, not a legislative decision. On that basis, UCM asserts that the 120-day statute of limitations in section 66022 does not apply here. In this regard, UCM repeatedly emphasizes that this action is not one to invalidate Indian Wells's fee ordinances—for example, on account of some flaw in the legislative process—but is rather a refund action seeking to recoup excessive fees charged to a particular customer.

We need not decide whether the distinction *N.T. Hill* drew is correct, because UCM errs when it claims to be challenging an adjudicative, rather than a legislative, decision. The clear gravamen of UCM's action is an attack on the validity of the ordinances giving rise to the fee, not on the discretionary application of those ordinances to Kern, and therefore, assuming *N.T. Hill* is correct, section 66022 nevertheless applies. Significantly, this is not a case in which the relevant ordinances were ambiguous as to whether they applied to public educational entities, and the utility made an interpretive decision to apply them to Kern. Were that the case, the interpretive decision might be sufficiently discretionary and subject to reasonable debate as to make it adjudicative, and the 120-day statute of limitations in section 66022 might, under *N.T. Hill*, be inapplicable. But here, Indian Wells made no such adjudicative determination, because the ordinances in question unambiguously applied to Kern. In fact, the ordinances expressly referred to educational entities such as Kern, and calculation of the fees was a purely ministerial act—assertedly performed by a computer—based on the formulas set forth in the fee legislation, the amount of water Kern used, and similar readily measurable and objectively verifiable data. In short, the essence of UCM's argument is that the ordinances were invalid *ab initio* because they imposed hidden capital facilities fees on public entities in excess of the

amounts permitted under the San Marcos Legislation. Because this challenge goes directly to the validity of the ordinances, UCM cannot rely on *N.T. Hill* as a basis for avoiding the 120-day statute of limitations in section 66022.

In this regard, our opinion in *Howard Jarvis Taxpayers Assn. v. City of La Habra* (2001) 25 Cal.4th 809 [107 Cal.Rptr.2d 369, 23 P.3d 601] can be distinguished. In that case, we held that a new violation of Proposition 62 occurred every time a city attempted to collect a tax under an ordinance that had not been approved by the requisite majority vote of the electorate. Therefore, though the plaintiffs' challenge was to the underlying validity of the tax ordinance, a separate limitations period ran from each individual collection of the tax. (*Howard Jarvis*, at pp. 821-822.) But there, we were construing the three-year statute of limitations applicable to "an action upon a liability created by statute." (Code Civ. Proc., § 338, subd. (a).) That statute ran from the date the action accrued, which we construed to mean the date the tax was collected. (*Howard Jarvis*, at p. 821.) Government Code section 66022, however, expressly states that it runs from the "effective date" of the fee legislation. Therefore, assuming section 66022 applies, its express language is controlling in this regard.

UCM also argues that Government Code section 66022, by its terms, only applies to validation proceedings "brought pursuant to Chapter 9 (commencing with Section 860) of Title 10 of Part 2 of the Code of Civil Procedure" (§ 66022, subd. (b); see Code Civ. Proc., §§ 860-870.5), whereas its action is not a validation proceeding of this type. In this regard, UCM simply misreads the statute. The provision on which UCM relies is not a limitation on the *applicability* of section 66022, but rather an additional procedural restriction on suits like this one to challenge the validity of fee legislation— indeed, a restriction that UCM has failed to satisfy. In other words, UCM has not only failed to bring its claim within the 120-day limitations period, but it has also failed to bring it as a validation proceeding. It cannot claim this failure somehow renders section 66022 inapplicable.

UCM further asserts that application of the 120-day statute of limitations in section 66022 is inconsistent with the terms and purposes of the San Marcos Legislation. UCM argues that the San Marcos Legislation places limits on the "imposition" of fees (see, e.g., § 54999.3), and the imposition of fees occurs "on the date on which the statement of charges for a public utility service is mailed or otherwise transmitted." (§ 54999.1, subd. (h).) From these facts, UCM concludes that any limitations period that might apply in this case must run from the date Indian Wells mailed its statement of charges, not from the effective date of its fee ordinances. If this were not

so, UCM asserts, then its cause of action might become time-barred even before it accrued. In other words, no infringement of the San Marcos Legislation occurs until a statement of charges is mailed, but by that time, it might be too late under section 66022 to bring an action challenging the validity of the fee ordinances.

In pressing this argument, UCM again misreads the San Marcos Legislation. Specifically, UCM is wrong to assume that no infringement of the San Marcos Legislation can occur until a utility actually charges an excessive fee by mailing an invoice to a customer. Rather, an ordinance, resolution, or motion that unambiguously establishes a fee in excess of what the San Marcos Legislation permits is immediately subject to challenge when adopted. As for section 54999.1, subdivision (h), which clarifies that "[a] capital facilities fee is imposed on the date on which the statement of charges for a public utility service is mailed," we think a distinction is appropriate between when a fee is *imposed* (meaning, in this context, "charged") and when an infringement of the San Marcos Legislation first occurs. In several places, the San Marcos Legislation refers to fees imposed before July 21, 1986 (the date of our decision in *San Marcos I*) and fees imposed after that date. (See §§ 54999.2, 54999.3, subds. (a), (b).) To avoid ambiguity with respect to these provisions, the Legislature needed to define precisely the date on which a fee is imposed, and it did so in subdivision (h) by declaring that fees are imposed when they are charged. But the same date does not necessarily determine when an infringement of the San Marcos Legislation first occurs. In a case such as this one, where the ordinance creating the fee clearly applies to public entities, it is the *enactment* of an improper fee, not the mailing of the charge, that violates the exemptions we reaffirmed in *San Marcos I* (*San Marcos I, supra*, 42 Cal.3d at p. 161), and an affected public entity is entitled to challenge the ordinance, and thereby clarify its legal obligations, without waiting to receive a statement of charges.

UCM also argues that it will be tremendously difficult, as a practical matter, for a public entity such as Kern to determine within 120 days whether a newly enacted fee includes an excessive capital facilities fee. Among other things, UCM points out the accounting complexity of making this determination, as well as the necessity of expert opinion and access to information that is in the control of the utility. To some extent at least, UCM's concern is mitigated by section 54999.3, subdivision (c), which requires public utilities, upon request or when imposing or increasing a capital facilities fee, to "identify the amount of the capital facilities fee." The same subdivision puts the burden on the utility imposing or increasing the

fee to "produc[e] evidence to establish . . . that the amount of the capital facilities fee does not exceed the amount necessary to provide capital facilities for which the fee is charged." These provisions help ensure that public entities such as Kern have the information they need to assess, at least preliminarily, whether to challenge new or increased fees.

Moreover, UCM's concern goes fundamentally to the *wisdom* of the statute of limitations, not its *applicability*. To that extent, it should direct its concern to the Legislature. As the Court of Appeal noted in *San Marcos II*, the Legislature may well have determined that a short statute of limitations was appropriate to give public utilities certainty with respect to the enforceability of their fee ordinances and resolutions (see § 54999, subd. (a); see also *San Marcos II*, *supra*, 190 Cal.App.3d at pp. 1085-1086), even if doing so was at the cost of making challenges to those ordinances and resolutions difficult.

UCM asserts, however, that the fee ordinances Indian Wells adopted after passage of the San Marcos Legislation included hidden or "buried" capital facilities fees that exceeded the permissible amount. UCM argues Kern had no way of knowing about these hidden fees, and therefore equitable tolling is appropriate.

In other contexts, we have recognized a "discovery rule" that tolls the statute of limitations until the date the plaintiff knew or should have known the factual basis of the cause of action. (See, e.g., *Norgart v. Upjohn Co.* (1999) 21 Cal.4th 383, 397 [87 Cal.Rptr.2d 453, 981 P.2d 79] [product liability]; *Prudential-LMI Com. Insurance v. Superior Court* (1990) 51 Cal.3d 674, 686-687 [274 Cal.Rptr. 387, 798 P.2d 1230] [insurance].) Here, however, the law requires public utilities to make available information establishing that their capital facilities fees are not excessive. (§ 54999.3, subd. (c).) Therefore, a diligent plaintiff should be able to discover, within the statutory period, whether a cause of action exists. Tolling might of course be appropriate during the period a public utility is processing a request for information prior to disclosure, but we think a broader application of the discovery rule would be directly at odds with the legislative intent to give public utilities certainty with respect to the enforceability of their fee ordinances and resolutions. (§ 54999, subd. (a); *San Marcos II*, *supra*, 190 Cal.App.3d at pp. 1085-1086.) If a plaintiff could challenge fee legislation any number of years after the legislation was adopted simply by taking advantage of the discovery rule and without any allegation that critical information was withheld, then public utilities would be left in a continuous state of fiscal uncertainty, which ultimately would only increase costs for consumers.

UCM also argues tolling or estoppel should apply here because when Indian Wells increased its capital facilities fees, it did not comply with the San Marcos Legislation by disclosing the amount of the increase. (See § 54999.3, subd. (c).) In this regard, UCM again focuses on alleged hidden capital facilities fees that it says Indian Wells improperly designated as user charges.

To the extent a public entity such as Kern can show that it was unable to bring its action within the limitations period because critical information was improperly withheld, or its disclosure improperly delayed, then a court might reasonably estop the defendant from asserting the statute of limitations. (Cf. *Neff v. New York Life Ins. Co.* (1947) 30 Cal.2d 165, 169 [180 P.2d 900, 171 A.L.R. 563] [misrepresentation or concealment by a defendant might bar it from raising the defense of the statute of limitations]; *Benner v. Industrial Acc. Com.* (1945) 26 Cal.2d 346, 349-350 [159 P.2d 24] ["To create an equitable estoppel, 'it is enough if the party has been induced to *refrain* from using such means or taking such action as lay in his power, by which he might have retrieved his position and saved himself from loss.' . . . '. . . Where the delay in commencing action is induced by the conduct of the defendant it cannot be availed of by him as a defense'"]; *Seelenfreund v. Terminix of Northern Cal., Inc.* (1978) 84 Cal.App.3d 133, 138-139 [148 Cal.Rptr. 307].) Therefore, if Indian Wells (whether deliberately or not) improperly accounted for some or all of its capital facility expenses as if they were recurring operational costs, and thus "buried" as ordinary user charges what should have been designated as capital facilities fees, and if by burying the fees in this way, Indian Wells failed to comply with its statutory disclosure duty (§ 54999.3, subd. (c)), then Kern (or UCM as its assignee) might reasonably make out a case for estoppel.

UCM, however, may not gain the right, long after the fact, to second-guess the minutiae of Indian Wells's complex accounting decisions simply by making bare allegations of hidden or mischaracterized capital facilities fees. Vague allegations of this kind could be made in every case and at any time, permitting utility customers to prosecute lawsuits that amounted to little more than fishing expeditions. Therefore, the broad estoppel rule UCM advocates would only foster the uncertainty and protracted and costly disputation that the statute of limitations was designed to prevent. We conclude that, in circumstances like those presented here, a plaintiff seeking to avoid the statute of limitations by asserting estoppel must, at the very least, allege the precise accounting error on which it rests its estoppel argument, for example by designating the specific expense it claims the utility improperly characterized on its balance sheets. UCM does not satisfy this requirement,

instead merely making vague allegations that its own analysis of Indian Wells's accounting data would reveal additional capital facilities fees that Indian Wells did not properly identify. These allegations are insufficient. Moreover, UCM admits it had determined "in or around April 1996" that Indian Wells had charged Kern excess capital facilities fees and that it informed Kern of that fact immediately. Nevertheless, it waited until February 10, 1997, to bring this action. Under these circumstances, UCM cannot claim that any concealment by Indian Wells caused its delay.

## Conclusion

We believe the trial court was correct to find section 66022 applicable, and the Court of Appeal erred when it concluded otherwise. Accordingly, we reverse the judgment of the Court of Appeal and remand for further proceedings consistent with this opinion.

George, C. J., Kennard, J., Baxter, J., Werdegar, J., Chin, J., and McIntyre, J.,* concurred.

---

*Associate Justice of the Court of Appeal, Fourth Appellate District, Division One, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.