Filed 5/13/26; certified for publication 6/2/26 (order attached)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION ONE

TOVE HILLER,

      Plaintiff and Appellant,

v.

MARIN MUNICIPAL WATER DISTRICT,

      Defendant and Respondent.

(Marin County
Super. Ct. No. CV0000996)

      Plaintiff and appellant Tove Hiller filed a complaint and ordinary mandamus proceeding challenging increased water rates adopted by the Marin Municipal Water District (District). The District interposed a demurrer, which the trial court sustained without leave to amend on the ground her claims were foreclosed by the final judgment in the District's previously filed validation action under Code of Civil Procedure sections 860 through 870.

      On appeal, Hiller contends: (1) the District's use of the validation statutes to insulate its water rates from further judicial review is contrary to the underlying purposes of article XIII D, section 6 of the California Constitution (Proposition 218); (2) her due process rights were abridged because neither she nor her attorney were personally notified of the District's validation action; and (3) the plain language of Government Code section

1

53759,[1] which requires use of the validation statutes to challenge any ordinance, resolution or motion adopting "a fee or charge for water or sewer service," does not bar her mandamus claims challenging the water rates on substantive constitutional grounds. We affirm.

## BACKGROUND

### *Adoption of the Rate Ordinance*

On May 16, 2023, the District Board of Directors adopted Ordinance No. 464, establishing water service rates to remain in effect from July 1, 2023, through June 30, 2027. The ordinance recites compliance with the procedural and substantive requirements of Proposition 218, including conducting a cost-of-service analysis, providing notice to the public, and conducting a public hearing. It became effective 30 days after adoption.[2]

### *The Water District's Validation Action*

The following month, the District filed a validation action. The complaint alleged in detail the procedure utilized by the District's independent rate consultant who assisted the District with analyzing its service costs and establishing cost-based rates allocating service costs proportionately to properties within its service area, using the District's financial data, historical water sales, revenue requirements, and cost projections, as well as its specific customer water usage data and information. In making recommendations on tiered water rates, the consultant used the " 'base/extra capacity method,' " which is a methodology

---

[1] All further statutory references are to the Government Code unless otherwise indicated.

[2] Before its adoption, Hiller filed a government claim on behalf of herself and a similarly situated class, claiming the District's water fees violated Proposition 218 and requesting refunds. She filed an updated claim after the District adopted the rate ordinance.

2

used across California and promulgated by the American Water Works Association, refined to address the District's particular customer usage patterns. The complaint alleged the increased rates were supported by the consultant's study, which identified the District's revenue requirements given current and projected expenses, and allocated those costs to users based on their proportional cost of service.

The complaint in the validation action further alleged the District mailed notice of the proposed rates and charges in accordance with Proposition 218 to the record owner of any parcel upon which the water rates and charges were to be imposed, and to any water customers who were not property owners, not less than 45 days prior to the adoption of the ordinance. The notice identified the 120-day statute of limitations for challenging any new, increased, or extended fee or charge, as required by section 53759, subdivision (d), and included a link to the District's rate setting Web site where the consultant's study and other information on the rate setting process could be found. The complaint further alleged the District had presented the proposed increases and adjustments to the rates to the public on at least 12 occasions at public meetings and workshops between December 2022 and March 2023, prior to the mailing of the Proposition 218 notice.

The validation complaint also recited that a public hearing on the rate ordinance had been held in mid-May, and at the hearing, the District considered the consultant's study, heard oral testimony, and considered all written protests and related materials. As of the close of the hearing, the District had received 599 valid written protests, far below the 28,090 protests it would have had to have received to constitute a majority protest. The District therefore adopted the ordinance.

The validation complaint asked that the trial court order jurisdiction over "all interested persons ten (10) or more days after the completion of publication of the summons pursuant [to] Code of Civil Procedure section 861 and Government Code section 6063 in the Marin Independent Journal, a newspaper of general circulation, as soon as is reasonably practicable and the mailing of copies of the Summons and Complaint to those persons, if any, or their attorneys, who, no later than ten (10) days after final publication of the summons, either expressly notify the District's attorneys in writing of their interest in this matter, or file and serve legal actions against the District challenging the matters subject to this action." It also requested judgment declaring that the rate ordinance was valid and enacted in accordance with applicable law.

In July, the trial court issued a summons and order requiring service only by publication in the Marin Independent Journal. The District duly published the summons, which was addressed to all persons interested in the rate ordinance, as ordered for three consecutive weeks. The summons stated the District had filed an action to validate its adoption of the rate ordinance and further stated: "You may contest the legality or validity of this matter by filing with the Court a written pleading in response to the [validation] complaint not later than 31 days from July 19, 2023. [¶] Unless you so respond, your default will be entered upon application by the District, and the District may apply to the Court for the relief demanded in the [validation] complaint."

No party filed an opposing pleading by the statutory deadline. Accordingly, the District requested, and the trial court entered, a default against all defendants—that is, all persons interested in the proceedings

4

related to the rate ordinance—on August 28, 2023.[3]  Thereafter, the District filed a request for a default judgment on October 4, which the court entered on October 9.

### *Hiller's Lawsuit Challenging the Rate Ordinance*

In the meantime, in mid-September, Hiller filed the instant class action and mandamus proceeding.  She sought refunds of that portion of the District's water charges that allegedly exceeded the proportional cost of providing water service to each parcel, and declaratory and injunctive relief preventing the District from continuing to use an allegedly unconstitutional method for allocating fees between parcels and to require it to comply with the mandates of Proposition 218 that pricing reflect the cost of service for incremental levels of water usage to a given parcel and that funds collected not be allocated to other programs without a vote of the affected rate payers.  Hiller did not effect service of process on the District until the end of November, well after entry of the final judgment in the District's validation action.

The District interposed a demurrer to Hiller's combined complaint and mandamus petition on the ground it was barred by the validation judgment and, even if it was not, Hiller could only challenge the water rates through a reverse validation action, which she had failed to do.  Rather than file opposition, Hiller filed a first amended complaint.  The amended pleading made the same basic factual allegations as her original complaint and writ petition, but stressed the alleged constitutional violations, including

---

[3]  The District's request for judicial notice filed on July 25, 2025 and providing a copy of the notice of entry of judgment of the validation judgment, is granted.  (Evid. Code, §§ 452, subd. (d), 459, subd. (a).)

5

violations of Proposition 218 and the federal due process and takings clauses. The District again demurred.

This time, Hiller filed opposition, arguing the District's reliance on the validation statutes, in this particular case, conflicted with the purpose of Proposition 218. She further argued that section 53759, the statute requiring water rate challenges to be brought under the validation statutes, did not, on its face, apply to her mandamus claims, and that the District's failure to personally notify her of its validation action violated her due process rights.

After hearing, the trial court sustained the District's demurrer without leave to amend. Specifically, the court ruled the District's pursuit of a validation action (and Hiller's failure to timely respond to it) precluded Hiller from attacking the rate ordinance, including on constitutional grounds, and there was no reasonable possibility this defect could be cured by amendment.[4]

## DISCUSSION

### *The Validation Statutes*

" 'The Code of Civil Procedure provides, in sections 860 to 870, a set of accelerated in rem procedures for determining the validity of certain bonds, assessments and other agreements entered into by public agencies.' [Citation.] Commonly called the validation statutes, they allow a public agency to file an action to promptly determine the validity of any of the

---

[4] To the extent there is any uncertainty that the order sustaining the demurrer without leave to amend was the final, appealable judgment in these proceedings, we construe it to be so. (See *Cardenas v. Horizon Senior Living, Inc.* (2022) 78 Cal.App.5th 1065, 1069; *Nowlon v. Koram Ins. Center, Inc.* (1991) 1 Cal.App.4th 1437, 1440–1441 ["In the interests of justice and to prevent unnecessary delay, we deem the order sustaining the demurrer as incorporating a judgment of dismissal and treat Nowlon's notice of appeal as applying to the dismissal."].)

6

agency's acts that fall within the scope of their provisions. (Code Civ. Proc., § 860.) They also allow any 'interested person' to bring an action challenging the validity of such acts. (*Id.*, § 863.) Those suits are sometimes referred to as 'reverse' or 'inverse' validation actions." (*Coachella Valley Water Dist. v. Superior Court* (2021) 61 Cal.App.5th 755, 767 (*Coachella Valley I*); see *Howard Jarvis Taxpayers Assn. v. Coachella Valley Water Dist.* (2025) 116 Cal.App.5th 520, 548–549 (*Coachella Valley II*).)

If the validation statutes apply, the validation (or inverse validation) complaint generally must be filed " 'within 60 days of the act to be challenged (Code Civ. Proc., §§ 860 [validation claims or actions], 863 [inverse validation claims or actions]); notice of the claim must be served on "all interested parties . . . by publication" (*id.*, § 861); the claim or action must be given preference over other civil actions (*id.*, § 867); any appeal of the trial court's ruling must be noticed within 30 days of the notice of entry of judgment (*id.*, § 870, subd. (b)); and the judgment, if not appealed or once affirmed on appeal, is "forever binding and conclusive . . . against the agency and against all other persons" (*id.*, § 870, subd. (a)).' " (*Coachella Valley I, supra,* 61 Cal.App.5th at p. 767.)

In fact, even if "the agency does nothing, and no interested person brings a reverse validation action within [the requisite time period], the action is deemed valid and 'become[s] immune from attack.' [Citations.] As a result, all matters 'which have been or which *could have been* adjudicated in a validation action, . . . including constitutional challenges,' must be 'raised within the statutory limitations period . . . *or they are waived.*' " (*Coachella Valley I, supra,* 61 Cal.App.5th at pp. 767–768.) " ' "A validating proceeding differs from a traditional action challenging a public agency's decision

because it is an in rem action whose effect is binding on the agency *and on all other persons.*" ' " (*Id.* at p. 768.)

" '[A] central theme in the validating procedures is speedy determination of the validity of the public agency's action.' [Citation.] 'A key objective of a validation action is to limit the extent to which delay due to litigation may impair a public agency's ability to operate financially.' " (*Planning & Conservation League v. Department of Water Resources* (2024) 98 Cal.App.5th 726, 772; accord, *Coachella I, supra,* 61 Cal.App.5th at p. 768 ["Although the statute of limitations for a validation action may seem 'extremely short,' our courts have concluded the 60-day period is reasonable given the important purposes of the validation statutes, which include 'the need to limit the extent to which delay due to litigation may impair a public agency's ability to operate financially.' "].)

The validation statutes "do not specify the matters to which they apply; rather, their procedures apply to 'any matter which *under any other law* is authorized to be determined pursuant to this chapter.' " (*Coachella I, supra,* 61 Cal.App.5th at p. 768, quoting Code Civ. Proc., § 860.) "Determining whether the validation statutes apply to any particular agency action is thus 'an exercise in cross-referencing.' " (*Coachella II, supra,* 116 Cal.App.5th at p. 549.)

Here, the "other law" triggering the validation statutory scheme is section 53759, a fairly recently enacted statute (Stats. 2021, ch. 216, § 1, effective Jan. 1, 2022, Sen. Bill No. 323 (2021–2022 Reg. Sess.)), which provides that any action "to attack, review, set aside, void, validate, or annul an ordinance, resolution, or motion adopting a fee or charge for water or sewer service" must be brought pursuant to the validation statutory scheme except as expressly provided for by section 53759, such as the 120-day, rather

8

than 60-day, limitations period. (§ 53759, subd. (a); see §§ 53759.1 [setting forth specific exhaustion of administrative remedies requirements effective January 1, 2025], 53759.2 [specifying the scope of judicial review and the permissible record in actions under section 53759, effective January 1, 2025].)

***The District's Demurrer was Properly Sustained[5]***

The trial court sustained the District's demurrer without leave to amend on the ground the final judgment in the District's validation action is a bar to Hiller's proceeding with the instant action challenging the rate ordinance.

As we have recited, section 53759 specifies that "[a]ny judicial action or proceeding to *attack,* review, set aside, void, *validate,* or annul an ordinance, resolution, or motion adopting a fee or charge for water or sewer service, or modifying or amending an existing fee or charge for water or sewer service" must be brought pursuant to the validation statutes. (§ 53759, subds. (a) & (b), italics added.) Under the validation statutes, a "reverse" validation action, that is an action by an interested person challenging a water or sewer

---

[5] Our standard of review is well established. " 'In reviewing a judgment of dismissal after a demurrer is sustained without leave to amend, we must assume the truth of all facts properly pleaded by the plaintiff. . . . Regardless of the label attached to the cause of action, we examine the complaint's factual allegations to determine whether they state a cause of action on any available legal theory. [Citation.] However, the judgment will be affirmed if it is proper on any of the grounds raised in the demurrer, even if the court did not rely on those grounds. [Citation.] [¶] We do not assume the truth of contentions, deductions, or conclusions of fact or law and may disregard allegations that are contrary to the law or to a fact which may be judicially noticed. When a ground for objection to a complaint, such as the statute of limitations, appears on its face or from matters of which the court may or must take judicial notice, a demurrer on that ground is proper.' " (*Jackson v. Doe* (2011) 192 Cal.App.4th 742, 750–751.)

rate, is permitted only "if no [validation] proceedings have been brought by the public agency." (Code Civ. Proc., § 863.)

Thus, on the face of the applicable statutes, Hiller had two procedural options for challenging the District's water rate increases—file a reverse validation action before the District filed its validation action, or appear in the validation action "and contest the legality or validity of the matter sought to be determined." (Code Civ. Proc., § 862.) She did neither.

As a consequence, Hiller is barred from litigating any "matters which have been or which could have been adjudicated in [the] validation action, . . . including constitutional challenges." (*Friedland v. City of Long Beach* (1998) 62 Cal.App.4th 835, 846–847 (*Friedland*); see *Tehama-Colusa Canal Authority v. U.S. Dept. of Interior* (E.D. Cal. 2011) 819 F.Supp.2d 956, 997 [stating "a federal court must give to a state court judgment the same preclusive effect as would be given that judgment under the law of the state in which the judgment was granted" and quoting *Friedland* regarding the conclusive effect of judgments in validation actions], aff'd sub nom. *Tehama-Colusa Canal Authority v. U.S. Department of the Interior* (9th Cir. 2013) 721 F.3d 1086.) Accordingly, she is barred from pursuing the claims she has advanced in the instant litigation because they could have been raised, and should have been raised, in either a reverse validation action or in the District's validation action.

*Campana v. East Bay Municipal Utility Dist.* (2023) 92 Cal.App.5th 494 (*Campana*), is illustrative. In that case, the plaintiffs alleged that a tiered-rate water structure the utility district used to determine the cost of residential and commercial water service violated Proposition 218. (*Id.* at p. 496.) The trial court sustained the district's demurrer without leave to amend. The Court of Appeal affirmed on the ground the plaintiffs' claims

were barred by the 120-day limitations period in Public Utilities Code section 14402. (*Campana*, at pp. 496, 501.)

Like section 53759, Public Utilities Code section 14402 states: "A district or any interested person may bring an action pursuant to [the validation statutes] to determine the validity of district rates or charges" within 120 days of the effective date of the ordinance.[6]

It was undisputed the 120-day period to challenge the utility district's "adoption of water rates in 2017 and 2019 [had] long since passed." (*Campana, supra*, 92 Cal.App.5th at p. 501.) As the court pointed out, it was the enactment of the allegedly improper charges that triggered the 120-day limitations period; the period did not begin to run anew with each billing or payment of the rate. (*Ibid*; accord, *Regents of University of California v. City & County of San Francisco* (2004) 115 Cal.App.4th 1109, 1115 ["Case law is clear that the enactment of a utility rate or rate increase, and not a subsequent act which actually imposes a utility charge, triggers the 120-day statute of limitations."].)

The appellate court also rejected the plaintiffs' attempt to "avoid the applicable statute of limitations by characterizing their claim as merely seeking a refund of the excess fees that were paid," without invalidating the underlying rate-setting resolution. (*Campana, supra*, 92 Cal.App.5th at pp. 501–502.) Noting the complaint clearly challenged the validity of the resolution at issue, the court stated: "Even without these overt challenges to the validity of the resolutions, the inevitable *effect* of [the] plaintiffs'

---

[6] Public Utilities Code section 14402 applies to Municipal Utility Districts such as East Bay MUD, while section 53759 applies to water districts like the District organized under the Municipal Water District Law (Wat. Code, § 71000 et seq.). The two statutes are the same in all material respects.

allegations (if true) would be to invalidate them. This is precisely what [the] plaintiffs' complaint seeks." (*Id.* at p. 501.)

So, too, here. Hiller's operative pleading seeks a declaration that the District's "ongoing water service charges violate the California Constitution"; a writ of mandate ordering the District "to comply with all mandatory limitations on water service charges" imposed by Proposition 218, "including charging only for the actual proportional cost of water service to a given parcel"; a permanent injunction enjoining the District "from engaging in" the allegedly "improper activities and practices"; and refunds "in an amount that is equal to the difference between (a) the water charges paid . . . and (b) the maximum amount of the water charges that would have been imposed" had the District complied with the alleged "limitations of the California Constitution." To quote *Campana,* it "strains credulity to argue that these allegations do not seek to 'attack, review, set aside, void, or annul' " the District's rate ordinance. (*Campana, supra*, 92 Cal.App.5th at p. 501.)

Despite the clarity of the relevant statutes and precedent against her, Hiller maintains the validation statutes, which were enacted prior to Proposition 218, cannot trump the constitutional right to vote on property-related fees and exactions secured by that initiative measure. This argument is misdirected. The validation statutes and section 53759 (and its companion statutes, §§ 53759.1 & 53759.2) have not altered the requirements and protections of Proposition 218. Rather, they provide the procedures for *enforcing* the provisions of the proposition. Indeed, whether the District complied with the requirements of Proposition 218 was the very issue addressed in its validation action. Nor do the validation statutes and section 53759 deprive Hiller of the "clear and certain" remedy she claims is required to remedy constitutional violations. To the contrary, she had the ability to

12

file either a reverse validation prior to the District filing its validation action, or she could have appeared in the District's action. That *she* failed to do either does not amount to a statutory abridgement of her rights, including her right to vote, under Proposition 218.

There also is no merit to Hiller's assertion that her mandamus claim, in any case, falls outside the purview of section 53759. As we have recited, subdivision (a) of this statute provides: "(a) Any *judicial action or proceeding* to attack, review, set aside, void, validate, or annul an ordinance, resolution, or motion adopting a fee or charge for water or sewer service, or modifying or amending an existing fee or charge for water or sewer service, shall be commenced within 120 days of the effective date or of the date of the final passage, adoption, or approval of the ordinance, resolution, or motion, whichever is later." (§ 53759, subd. (a), italics added.) Subdivision (b) goes on to state: "(b) *Any action under this section* by a local agency or interested person shall be brought pursuant to Chapter 9 (commencing with Section 860) of Title 10 of Part 2 of the Code of Civil Procedure [i.e., the validation statutes], except that the time limits of subdivision (a) shall apply." (*Id.*, subd. (b).)

Hiller focuses on the fact subdivision (a), setting forth the 120-day limitations period, speaks in terms of "[a]ny judicial action or *proceeding*," whereas subdivision (b), requiring use of the validation statutes, refers only to "*Any action* under this section." (§ 53759, subds. (a) & (b), italics added.) Since a writ petition is deemed a "proceeding" rather than an "action" (see *Binyon v. State of California* (1993) 17 Cal.App.4th 952, 954–955), she concludes subdivision (b)'s mandate to bring "any judicial action" pursuant to the validation statutes does not apply to mandamus cases.

13

At best, Hiller identifies an arguable ambiguity in the statute. Any such ambiguity, however, is readily resolved by reference to the statutory scheme of which section 53759 is a part, as well as its legislative history, both of which make abundantly clear the Legislature's purpose and intent in enacting section 53759 (and its companion statutes) was to establish a relatively short limitations period for *any* legal challenge to an increase in water rates subject to Proposition 218 to ensure certainty as to this critically important revenue stream. (See *People v. Valdez* (2018) 28 Cal.App.5th 308, 313 [reciting tenets of statutory interpretation].)

Looking first at the language of section 53759 in its entirety, use of the word "any" in subdivision (a) and the inclusion of several disjunctives to link essentially synonymous words all serve to broaden the applicability of the scope of the provision. The language regarding "[a]ny action under *this section*" set forth in subdivision (b), in turn, can reasonably be read, in context, to refer to the *validation action*, which pursuant to subdivision (a), encompasses "[a]ny judicial action or proceeding." Further, the statute expressly references Proposition 218, requiring that the written notice sent to ratepayers under that constitutional provision must include notice "that there is a 120-day statute of limitations for challenging any new, increased, or extended fee or charge"—there is, notably, no limitation as to the nature of the challenge, i.e., a complaint for declaratory and injunctive relief, or a writ petition. (§ 53759, subd. (d).) And, when it wanted to exclude certain related matters from the purview of the statute (and therefore from use of the validation statutes), the Legislature did so expressly. (*Id.*, subd. (c) [does not apply to charges for water and sewer service for which another statute specifies a specific time and procedure for bringing such an action], *id.*, subd. (e) [does not apply to billing errors due to defective *implementation* of

14

the adopted ordinance, resolution, or motion], & *id.*, subd. (f) [only applies to a fee or charge for water or sewer service adopted, modified, or amended after Jan. 1, 2022].)

The subsequently enacted companion statutes, sections 53759.1 and 53759.2 (effective January 1, 2025), reinforce that the Legislature's intent in enacting this statutory scheme was to place limits on the procedural options for challenging water and sewer rates and to establish streamlined proceedings that would expedite any litigation challenging their adoption, modification, or amendment.[7]  Section 53759.1, for example, creates an " '[e]xhaustion of remedies requirement,' " prohibiting a "person or entity" from bringing an "action or proceeding alleging noncompliance" with Proposition 218 "for any new, increased, or extended fee or assessment, unless that person or entity has timely submitted to the local agency a written objection to that fee or assessment that specifies the grounds for alleging noncompliance," so long as the local agency has complied with certain procedural requirements.  (§ 53759.1, subds. (a) & (b).)  One such procedural requirement mandates that the local agency respond in writing to such timely written objections.  (*Id.*, subd. (c)(5).)  Furthermore, and reflecting the Legislature's intent to create both a uniform and streamlined procedure for any rate challenge, section 53759.1 provides: "There shall be no independent cause of action as to the adequacy of a local agency's response." (*Id.*, subd. (e).)

---

[7]  We note that all three statutes comprise article 4.7 entitled "Legal Action Challenging Revenue Measures for Water or Sewer Service," and are located in the same part of the Government Code where the Legislature codified article 4.6, the Proposition 218 Omnibus Implementation Act. (§§ 53750–53758.)

In addition, if the local agency has complied with the procedural requirements set forth in section 53759.1, section 53759.2 provides that in "*any* judicial action or proceeding to review, invalidate, challenge, set aside, rescind, void, or annul the fee or assessment for failure to comply with the procedural and substantive requirements" of Proposition 218, the court's review is generally limited to a record of proceedings containing specified documents. (§ 53759.2, subd. (b), italics added.) Furthermore, the Legislature again expressly limited the scope of the statute when it wanted to. (*Id.*, subd. (c) [statute does not preclude civil action related to "a local agency's failure to implement a fee or assessment in compliance with the manner adopted by the local agency"].)

Indeed, the act adopting these companion statutes states they were enacted both to control the extent of litigation over water rates and to provide "a meaningful opportunity for a ratepayer to present an objection to a proposed new or amended property-related water or sewer fee or charge, or any special assessment, and allow the local agency the opportunity to resolve the objection" or at least narrow the grounds for it and create a better evidentiary record for any subsequent litigation. (Stats., 2024, ch. 561, § 1(b).)

Obviously, neither the language of section 53759 and its companion statutes, nor their apparent intent, would be furthered by allowing later "proceedings" challenging increased water rates, such as petitions for writ of mandate. To the contrary, concluding that such proceedings fall outside sections 53759, 53759.1, and 53759.2, would reinject the very uncertainty in rate increases the Legislature clearly sought to eliminate.

The legislative history of these statutes further confirms what seems apparent from the statutory language, considered in its entirety. As

16

explained by the author of section 53759: " 'Other utility agencies, such as electricity, have a 120-day statute of limitations for challenges to rates or charges that have been in effect for decades.  This is because lawsuits arising years after rates were adopted create unstable funding for the agency.  This statute of limitations has not been extended to water agencies yet, and the inability to plan for such claims effects funding necessary to supply safe drinking water, upgrade and improve aging infrastructure, and operate effectively.' "  (Sen. Com. on Governance and Finance, Rep. on Sen. Bill No. 323 (2021–2022 Reg. Sess.) as amended Mar. 17, 2021, p. 3 (Governance and Finance Report).)  By requiring an interested party to bring an action within 120 days after the local water agency adopts the new rate, Senate Bill No. 323 " '*would balance the interests of ratepayers with those of public water and sewer agencies and end the current piecemeal character of existing law.*' " (*Ibid.,* italics added.)

With respect to the proposed adoption of a 120-day limitations period for water and sewer rate challenges, the Senate Judiciary Committee Analysis explained: "Reliable long-term financial planning is paramount in providing essential government services, like water and sewer.  Public water and sewer utility budgets are largely funded by revenue collected through service rates.  These rates provide the funding necessary to supply safe drinking water, upgrade and improve aging infrastructure, and operate effectively.  While public water and sewer service providers require financial stability to meet these demands, existing law does not prevent lawsuits that seek refunds or seek to invalidate existing rate structures years after rates have been adopted and collected."  (Sen. Com. on Judiciary, Analysis of Sen. Bill No. 323 (2021–2022 Reg. Sess.) as amended Mar. 17, 2021, p. 5 (Judiciary Committee Analysis).)  Rather, "under the doctrine of 'continuous

17

accrual,' . . . ' "a series of wrongs or injuries may be viewed as each triggering its own limitations period, such that a suit for relief may be partially time-barred as to older events but timely as to those within the applicable limitations period." ' " (*Id*. at p. 6.)  In contrast, caselaw has held the continuous accrual doctrine inapplicable when validation statutes—which focus on the adoption or amendment of a rate or charge—govern.  (*Ibid*., citing *Utility Cost Management v. Indian Wells Valley Water Dist*. (2001) 26 Cal.4th 1185, 1195 (*Utility Cost Management*).)

The Judiciary Committee Analysis acknowledges the shortness of the proposed 120-day statute of limitations, but observes it is not unique in its brevity and what constitutes a reasonable time to file suit is a question ordinarily left to the Legislature.  (Judiciary Committee Analysis, at p. 5.) Moreover, "[c]ourts have concluded [that even a] 60-day period is reasonable given the important purposes of the validation statutes, which include 'the need to limit the extent to which delay due to litigation may impair a public agency's ability to operate financially.' " (*Ibid*.)  The analysis also cites caselaw rejecting a due process challenge to a 120-day timeframe.  (*Id*. at pp. 6–7; see Governance and Finance Report at p. 3 [quoting *Utility Cost Management*, *supra*, 26 Cal.4th at p. 1185, which held in a related context that "because of the extensive fiscal analysis and public review requirements on connection fees and capacity charges, '. . . a diligent plaintiff should be able to discover, within the statutory period, whether a cause of action exists.' "].)

In sum, as amici for the District observe: "These laws are not optional technicalities, but jurisdictional requirements enacted to strike a careful balance between timely enforcement of Proposition 218 and the stability and reliability of rate revenue to pay for complex critical infrastructure services."

18

We therefore reject Hiller's assertion that a rate challenge styled as a mandamus proceeding falls outside section 53759 and its companion statutes.

Hiller lastly argues that even if this Court rejects her proffered reading of the pertinent statutes, she should nevertheless be allowed to pursue a constitutional due process claim outside section 53759 and the validation statutes given the unique facts of this case. She maintains this is so because the District was aware she had an interest in the subject matter of the validation action due to the government claims she submitted and also knew she was represented by counsel. Under these circumstances, she asserts the District was required, as a matter of due process, to give her notice personally of its validation action.

Hiller does not dispute that she received notice as ordered by the trial court.[8] Nor does she dispute that such notice complied with the validation statutes. And to the extent she is claiming that said notice, permitted under the validation statutes, was, itself, unconstitutional, this argument is foreclosed because she failed to raise it in the validation action. Rather, she

---

[8] By this we mean Hiller does not challenge that the District properly published notice to all possible defendants in accordance with the court's order and the validation statutes. Section 861 provides: "Jurisdiction of all interested parties may be had by publication of summons pursuant to Section 6063 of the Government Code in a newspaper of general circulation designated by the court, published in the county where the action is pending and whenever possible within the boundaries of the public agency, and in such other counties as may be ordered by the court. . . ." In addition, prior to completion of such publication, the agency shall, to the extent which the court finds reasonably practicable, give notice of the pendency of the proceeding by mail or other means ordered by the court. (*Ibid.*) Here, as we discuss below, the District suggested the court could order that notice be mailed to a limited group of individuals, but the court concluded the defendants could not be "served with reasonable diligence in any other manner set forth in Code of Civil Procedure sections 415.10 through 415.30." Thus, only notice by publication was ordered.

maintains only that she was entitled to special, personal notice because she had filed a refund claim. Hiller cites no authority in support of this assertion, and we are aware of none. (Compare *Friedland*, *supra*, 62 Cal.App.4th at p. 850 [remarks at hearing that " '[p]assing this item will likely result in a taxpayer's lawsuit' " and " '[i]f government by litigation is necessary . . . so be it' " not deemed a request for personal notice for purposes of the validation statutes].) Here, as we have recited, the Proposition 218 notice sent to all property owners included a statement of the special 120-day statute of limitations for challenging any new, increased, or extended fee or charge, as required by Government Code section 53759, subdivision (d). A "diligent plaintiff," especially one represented by counsel, should have been on notice regarding the procedures and timeframes applicable for challenging the District's water rates.[9] (*Utility Cost Management*, *supra*, 26 Cal.4th at p. 1197.)

---

[9] Hiller additionally complains the notice ordered by the trial court in the validation action differed from that suggested by the District in its complaint. But, again, she cites no authority in support of the notion the trial court was bound to give notice as requested by the District and did not have discretion to order notice by any means authorized by the validation statutes. In any case, Hiller would not have benefitted by the District's suggested notice—requiring the "mailing of copies of the Summons and Complaint to those persons, if any, or their attorneys, who, no later than ten (10) days after final publication of the summons, either expressly notify the District's attorneys in writing of their interest in *this matter*, or file and serve legal actions against the District challenging the matters subject to this action." (Italics added.) Hiller did not notify the District of her interest in "this matter"—i.e., the validation action. Nor did she file or serve her lawsuit in the time period specified.

## DISPOSITION

The judgment is affirmed.  The District is entitled to its costs on appeal.

                            _____

                            Banke, J.

We concur:


_____

Humes, P. J.


_____

Langhorne Wilson, J.


A171271, Hiller v. Marin Municipal Water District

Filed 6/2/26

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| TOVE HILLER,<br><br>    Plaintiff and Appellant,<br><br>v.<br><br>MARIN MUNICIPAL WATER DISTRICT,<br><br>    Defendant and Respondent. | A171271<br><br>(Marin County<br>Super. Ct. No. CV0000996)<br><br>    ORDER CERTIFYING OPINION FOR<br>    PUBLICATION<br><br>    [NO CHANGE IN JUDGMENT] |

**BY THE COURT:**

The opinion in the above-entitled matter, filed on May 13, 2026, was not certified for publication in the Official Reports. After the court's review of a request under California Rules of Court, rule 8.1120, and good cause established under rule 8.1105, it is hereby ordered that the opinion should be published in the Official Reports.


Dated: _____                    _____

                                                                              Humes,  P. J.

1

Trial Court:    Marin County Superior Court

Trial Judge:    Hon. Sheila Shah Lichtblau

Counsel:

Berding & Weil LLP, Anne Lorentzen Rauch, Daniel Rottinghaus, and Trinette Shawna Sachrison for Plaintiff and Appellant.

Best Best & Krieger LLP, Dean Seif Atyia, Evelyn Blanco, Lutfi Ziad Kharuf and Richard Edward Wall; Marin Municipal Water District, Molly Lorraine Maclean and Jerrad Mitchell Mills, for Defendant and Respondent.

Kronick, Moskovitz, Tiedmann & Girard, Erica Nelson Robinson and Andreya Y. Woo Nazal as Amicus Curiae on behalf of Defendant and Respondent.